## LAUREL LIGHT & RY. CO. *v.* JONES.*

(In Banc. Oct. 27, 1924. Suggestion of Error Overruled Dec. 15, 1924.)

[102 So. 1. No. 23932.]

1. ELECTRICITY. *Placing uninsulated electric wire in tree branches adjoining school playground held negligence.*

    A person or corporation using the dangerous agency of electricity is bound to exercise the highest degree of care, and it is negligence to place an uninsulated feed wire in the branches of trees adjoin·ing a public school playground where such trees are of such nature as would attract children to climb them.

2. ELECTRICITY. *Company held not relieved from negligence on theory of intervening efficient cause.*

    Where wires highly charged with electricity and uninsulated are strung through tops of trees where children habitually play, and a school boy eleven years of age attracted to the tree, and learn·ing that a shock would be received if a person came in contact with the wires so exposed, placed a hay wire on the feed wire so negligently exposed, and a third person was injured by coming in contact with the hay wire, the company is liable for the injury; the negligence of the company in having such a continuing situation being a contributing proximate cause of the injury.

3. DAMAGES. *Ten thousand dollars for permanent injuries to eleven year old boy by contact with negligently placed uninsulated electric wire held not excessive.*

    The facts of the case examined and considered; a verdict for ten thousand dollars for an injury received as shown in the opinion is not excessive.

ANDERSON, J., dissenting.

*Headnotes 1. Electricity, 20 C. J., Sections 36, 39; 2. Electricity, 20 C. J., Section 52; 3. Damages, 17 C. J., Section 433.

APPEAL from circuit court of Jones county.

HON. R. S. HALL, Judge.

Action by Silas Jones, by next friend, against the Laurel Light & Railway Company. From a verdict for plaintiff, defendant appeals. Affirmed.

*Shannon & Schauber*, for appellant.

At the conclusion of the plaintiff's testimony, the defendant made a motion to exclude all the testimony introduced by the plaintiff and direct the jury to return a verdict for the defendant. This motion was overruled by the court, which is the basis of the first assignment of error on behalf of appellant. After both plaintiff and defendant had rested their case, defendant asked for a peremptory instruction, which was refused by the court, and which refusal is the basis of the fourth assignment of error on behalf of appellant.

In order for liability to be fastened upon the appellant, it was necessary that this negligence, if any, should be the proximate cause of the plaintiff's injury. *Billingsly* v. *I. C. R. R. Co.*, 100 Miss. 612; *A. T. & S. F. Ry. Co.* v. *Samuel Calhoun*, 53 L. Ed. 671; *Green* v. *West Penn. Ry. Co.*, 55 L. R. A. (N. S.) 1915-C 151; *Stark* v. *Muskegon Traction & Lighting Co.*, 1 L. R. A. (N. S.) 822; *Seith* v. *Commonwealth Electric Co.*, 24 L. R. A. (N. S.) 978; *J. S. Moody* v. *Gulf Refining Co.*, 8 A. L. R. 1234; *Afflick* v. *Bates*, 21 R. I. 281, 79 Am. St. Rep. 801; *Bettz* v. *Brooklyn*, 41 N. Y. Supp. 1009, 10 App. Div. 382; 1 Cooley on Torts (3 Ed.), 99; Wharton on Negligence, sec. 134; 22 R. C. L. 113, sec. 3; 22 R. C. L. 124, sec. 11; *Cole* v. *German Savings & Loan Society*, 63 L. R. A. 416; *Solles* v. *Moore*, 21 L. R. A. 723; *Wood* v. *Penn. R. R. Co.*, 35 L. R. A. 199; *Stone* v. *Boston & Albany R. R. Co.*, 41 L. R. A. 794; Note in *Cahill* v. *Stone & Co.*, 19 L. R. A. (N. S.) 1094; *Parker* v. *Charlotte Electric R. Co.*, 169 N. C. 68, 85 S. E. 33; *Johnston* v. *New Omaha Electric Light Co.*, 78 Neb. 24, 17 L. R. A. (N. S.) 435; *Charette* v. *L'Anse*, 154 Mich. 204, 117 N. W. 737; *Adams* v. *Bullock*, 227 N. Y. 208, 125 N. E. 93; *Graves* v. *Washington Water Power Co.*, 44 Wash. 675, 11 L. R. A. (N. S.) 452.

The sixth instruction granted plaintiff on the trial of the case in the lower court is in these words: No. 6—

"If you find for the plaintiff, the form of your verdict may be, 'We, the jury, find for the plaintiff, and assess his damages at $————————, not to exceed twenty-five thousand dollars, the amount sued for.'" This form of an instruction has been especially condemned by this court in the recent case of *Gulf & Mississippi Coast Traction Co.* v. *Keebler, Alabama & Vicksburg Ry. Co.* v. *Dennis,* 91 So. 4; *Gulf & Mississippi Coast Traction Co.* v. *Keebler,* 94 So. 705.

Instruction No. 8 granted the plaintiff by the lower court is in these words: No. 8— "The proximate cause in law does not necessarily mean the act immediately precedes in point of time, but the act next to in point of cause to the accident." This instruction was granted by the court to the plaintiff, without notice to appellant or its attorneys, after the case had been closed by both plaintiff and defendant, and one-half of the argument made by counsel. That is Mr. Taylor on behalf of the plaintiff had spoken, and Mr. Arnold on behalf of the defendant had spoken, when the court granted Mr. Collins this instruction. The counsel for defendant prepared a bill of exceptions, setting out this fact, and also, setting out several objectionable statements made by Mr. Collins in the closing argument of the case, but the Judge in the lower court declined to approve appellant's bill of exceptions. However, on the motion for a new trial, evidence was introduced by the appellant to show that this instruction was granted by the court after Mr. Taylor had spoken, and while Mr. Arnold was making his argument on behalf of the appellant. In addition to our objection to have this instruction granted out of time, which we think was an injustice to the appellant, we think the instruction erroneously states the law, and is especially harmful in the case disclosed by this record in which an independent wrongful act just precedes the injury to the plaintiff. In the 3rd volume of Words & Phrases, 2nd series, p. 1333, proximate cause is several

times defined as the immediate cause which was the phrase used in the defendant's instructions.

*J. T. Taylor,* for appellee.

The first thing the counsel for appellant calls the court's attention to, is the fact that the court below denied defendant a peremptory instruction, and called the court's attention to a part of the testimony of witness Duke Cooley. There is no contention that Duke Cooley was under the control of the defendant in this case, but we do contend, and the undisputed evidence bears out our contention, that the defendant, Laurel Light & Railway Co. had full and complete control over their electric wires and also, the control over the fact as to whether or not these persimmon trees should grow up and mingle their branches among these wires of defendants highly charged with a deadly current of electricity. The facts in this case show clearly that the defendant the Laurel Light & Railway Co. is liable. *Meyer* v. *King,* 16 So. 245; *Giles* ·v. *Canal Co.,* 36 Am. St. Rep. 807-861.

In a case like this, the supreme court of Mississippi has laid down the rule and in the case of *Temple* v. *McComb City Electric Light & Power Co.,* 42 So. 874, this thing is used, where a small boy, climbing an oak tree having abundant branches is injured by coming in contact with an electric wire passing through the trees and negligently permitted by the company to remain uninsulated, the company is liable, since it is bound to take notice of the immemorial habit of small boys to climb such trees. Potera v. City of Brookhaven, 95 Miss. 774, 49 So. 617; *Yazoo City* v. *Birchett,* 42 So. 569. "Electric Companies must take notice of instinct of boys to climb trees." *Godfrey* v. *Kansas City Light & Power Co.,* 253 S. W. 233.

Counsel for appellant contended that because Duke· Cooley hooked the hay wire over defendant's uninsulat-

ed and highly charged feed wire, that the defendant, Laurel Light & Railway Co. should not be held liable. Now, that would be true, we concede, if the defendant, Laurel Light & Railway Co. had exercised such care and caution as the law requires them to exercise when using the highly dangerous element of electricity.   *Cumberland Telephone & Telegraph Co.* v. *Coshahan et al.,* 62 So. 824;   Hale on Torts, 217.

It must be observed that there is a great deal of difference between an intervening responsible agency and an intervening irresponsible agency, for instance, children.   *Binford* v. *Jones,* 82 Ind. 426, 42 Am. St. Rep. 508.

In reference to intervening negligent acts, it is generally held that where a person, by his negligence produces a dangerous condition of things, which does not become active for mischief, until another person has operated upon it by the commission of another negligent act, which might not unreasonably be anticipated to occur;   in that case the original act of negligence is then regarded as the proximate cause of the injury which finally results.   The principle is, that the first act is regarded as being continuous in its operation up to the time of the second, and therefore, for the purpose of fixing the defendant's liability, the two acts are treated as contemporaneous.   *Harriman* v. *Pittsburg etc. Railway Co.,* 4 Am. St. Rep. 507.

*Collins & Collins,* for appellee.

It is a well-established rule of this court that where a case is submitted to a jury under proper instructions, this court will not disturb the verdict of the jury unless their verdict and findings are manifestly contrary to the overwhelming weight of the testimony, or unless there were no facts upon which for them to base their verdict.   This rule is so well established by this court

that we presume it will not be disputed or contradicted
by counsel for appellant. The only question presented
to the jury in this case as shown from the record for
their determination was the question as to what was the
proximate cause of the injury to appellee, and we sub-
mit that the court was correct in submitting this ques-
tion to the jury. Counsel for appellant cite a good many
cases undertaking to define proximate cause and when
all of these are summed up, it seems that there is almost
a hopeless conflict of authorities on the point and this
is due in our opinion, to the fact that some of the courts
have undertaken to lay down a general definition of
proximate cause that will fit every state of facts, which,
in our opinion, is an impossibility, but the question as
to the proximate cause is always a question to be deter-
mined by the jury from the facts and all the surrounding
circumstances. *Milwaukee & St. Paul R. R. Co.* v.
*Kellogg,* 94 U. S. 469, 24 L. Ed. 256; *Adams* v. *Young,*
44 Ohio 80, 58 Am. St. Rep. 789; *Giles* v. *Canal Co.,* 36
Am. St. Rep. 851.

This rule of procedure seems to be universally follow-
ed by all the courts when a question arises as to what is
the proximate cause of an injury. The true rule and the
proper procedure as decided in the above cases are to
the effect that the question as to what is the proximate
cause is not a question of science or of legal knowledge,
but is a question of fact to be determined by the jury
under proper instructions. Counsel cite a good many
cases that from first blush seem to support their conten-
tion, but upon a careful reading of those cases, it will
be discovered by the court that these are cases where
there was no negligence on the part of the defendant in
the first place, and since there was no negligence on the
part of the defendant in the first place, the action of
the defendant therefore, could not be the proximate
cause of the injury. But in this case, we have a different
situation altogether.

Here is a light company dealing with the deadly agency of electricity, stringing a highly charged copper wire carrying about three thousand volts of electricity though the banches of some small persimmon trees located on the public school grounds in the heart of the city, where children congregate and play. These trees have a good many branches, some of which are low to the ground. Fence posts are erected by the body of these trees and other objects making the wires of the appellant easily accessible to these children attending school, or to state the facts in short, constructing a death trap right on the school grounds and then constructing a ladder up to this death trap and inviting the innocent and unsuspecting youth of this school up to the death trap, and yet counsel for appellant seems to take the position that there was no negligence on the part of the appellant in the first place, and they do this, notwithstanding the fact that this court has held that such an act is negligence and in some cases held that such acts constitute gross negligence, and in our opinion such a state of facts is bordering on criminal negligence. *Temple* v. *McComb City Electric Light & Power Co.,* 42 So. 874; *Yazoo City* v. *Birchett,* 42 So. 569; *Lynch* v. *Nurdin,* 1 Q. B.; *Godfrey* v. *Kansas City Light & Power Co.,* 253 S. W. 233; *Burke* v. *Creamery Package & Mfg. Co.,* 126 Iowa, 730, 102 N. W. 793, 106 Am. St. Rep. 377.

Counsel for appellant contends, however, that, because Duke Cooley whose presence the appellant was bound to anticipate in the tree where this wire was, hung a hay wire over this particular wire, that appellant was not bound to anticipate that he would do this and that injury would result to appellee. In other words, their contention is that appellant is not liable because they say appellant was not bound to anticipate the exact injury happening in the particular manner in which it did happen, but as stated above, this is not the rule be-

cause the great weight of authority is as shown in the case of *Burke* v. *Creamery Package Mfg. Co., supra; Williams* v. *Koehler,* 41 N. Y. App. Div. 426, 58 N. Y. Supp. 863; *Sullivan* v. *Creel,* an English case (1904) 2 Ir. 317; *Lundeen* v. *Livingston Electric Light Co.,* 17 Mont. —, 41 Pac. 995.

Counsel for appellant calls the court's attention to the sixth instruction which is an instruction on the form of the verdict and insists that this instruction is erroneous and that that might have been what they say induced the jury to find an excessive verdict and in support of this contention they cite the case of *Gulf & Mississippi Coast Traction Co.* v. *Keebler,* which will be found in 94 So. 795, but the instruction that the court had under consideration in that case differs from the instruction in this case because the instruction in that case told the jury they could fix the damages at any amount not to exceed the amount sued for, but the instruction in this case does not use any such words, but merely says that they could assess the damages in the sum of ——— dollars not to exceed the amount sued for, and left it entirely with the jury to say what the amount should be, without using the phrase "at any amount."

*Shannon & Schauber,* supplemental brief, for appellant.

It is now our purpose to call this court's attention to two cases that have been decided by this court since this cause was submitted. *Louisville & Nashville R. Co.* v. *Daniels,* 99 So. 434; *Illinois Central R. Co.* v. *Wright,* 100 So. 1; Sec. 56, vol. 1, Thompson on Negligence; *Deming* v. *Merchants Cotton Press & Storage Co. et al.,* 13 L. R. A. 518. The simplest statement of the rule as to the liability of an independent intervening cause is stated in 1 Thompson on Negligence, p. 58, sec. 55.

*Collins & Collins* and *J. T. Taylor,* supplemental reply brief for appellee.

1. Was the court right in submitting this case to the jury upon "What was the proximate cause?" Some courts have undertaken, and some text book writers have undertaken to define "proximate cause." No two state the definition alike and all admit that it is impossible to state a definition that will fit all cases. *Y. & M. V. R. R. Co.* v. *Smith* (Miss.), 60 So. 73; *Cumberland Telephone & Telegraph Co.* v. *Woodham,* 54 So. 890; *Milwaukee & St. Paul R. R. Co.* v. *Kellogg,* 94 U. S. 469, 24 L. Ed. 256; 22 R. C. L., sec. 31-32.

2. Did defendant have to anticipate the particular act that caused the injury, or was it enough if it could anticipate some injury to some one, in order that it may be liable? We lay down the proposition that defendant is liable in this case if it could reasonably anticipate that some of these boys would in some way be injured because of its negligence. *Telephone Co.* v. *Woodham, supra; Harrison* v. *Kansas City Electric Light Co.,* 195 Mo. 606, 93 S. W. 951; 7 L. R. A. (N. S.) 203; *Temple* v. *Light Co.,* 42 So. 874; *Potera* v. *City of Brookhaven,* 49 So. 618; *Yazoo City* v. *Anne Birchett,* 89 Miss. 700; *Harriman* v. *Pittsburg R. R. Co.,* 4 Am. St. Rep. (Ohio) 507; *Jackson* v. *The Texas Co.,* 143 La. 21, 78 So. 137.

3. What is the effect when the intervenor is an irresponsible child? The Jackson case cited immediately above, is authorative to the effect that an irresponsible child is not an effecient independent intervening cause that will insulate the defendant's negligence. The Birchett case, *supra,* does not reveal the author of the intervening cause, because no one knew who it was, but whether it was a responsible or an irresponsible agent who tied the hay wire to the guy-wire and to the step on the telephone pole, the court held defendant guilty for the negligent current on the guy-wire. *U. S. Natural*

*Gas Co.* v. *Talmadge Hicks,* 119 S. W. 166 (Ky.) ; 23 L. R. A. (N. S.) 249 ; *Branson* v. *Labrat,* 81 Ky. 638, 50 A. R. 193 ; Addison on Torts, 511 ; *Sioux City, etc. Ry. Co.* v. *Stout,* 17 Wall. 667, 21 L. Ed. 745 ; *I. C. R. R. Co.* v. *Wilson,* 23 Ky. 684, 63 S. W. 608, 23 L. R. A. (N. S.) 249, Note.

4. If the negligence of the intervener and original negligent person concur and cause injury, can this case stand? In other words, if Duke Cooley's age and experience were such as to cause him to be liable for the act of hanging the hay wire over the feed wire, and the defendant was negligent in placing the naked feed wire, carrying a heavy voltage of electricity within the street and play ground of the children of the Ellisville school, and through the tree they were in the habit of climbing, would defendant be excusable for its negligence? We submit that should our court hold this ten-year-old boy responsible for his act, still this would not excuse defendant of its negligence. They would be jointly liable for concurring negligence and could be sued jointly or severally or singly and each would be responsible for Boy Jones' injury. *Telephone Co.* v. *Woodham, supra; Hall* v. *Seaboard Air Line R. Co. et al.,* 100 So. (Ala.) 890 ; 29 Cyc. 565, note 69 ; 26 R. C. L., sec. 13, p. 764 ; Cooley on Torts (3 Ed.), 243, note 6 ; *Ala Power Co.* v. *Talmadge,* 93 So. 548 ; *McCoy* v. *L. & N. Ry. Co.,* 40 So. 107, 146 Ala. 337 ; *Cumberland Telephone Co.* v. *Fields,* 150 Ala. 315, 43 So. 714.

Argued orally by *Charles Shannon,* for appellant, and *Jeff Collins,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

The appellee was plaintiff in the court below and sued the appellant for personal injuries and recovered a verdict of ten thousand dollars. The appellant owns

and operates a street car system in Laurel, Miss., and an interurban line from Laurel to Ellisville, and its cars run from Laurel to Ellisville and are operated by electricity generated at a power plant in Laurel, Miss. In operating its line to and through Ellisville, appellant uses not only the trolley wire but also a feed wire of approximately the same size of the trolly wire and carries about the same voltage. This feed wire is suspended on poles about twenty feet from the ground on the east side of the car tracks, and is attached to the same poles that support the braces that hold up the trolley wire. In addition to this wire, appellant has several small light wires fastened to cross-arms above this feed wire. The street car line in entering Ellisville passes along the street just west of the yard of the Ellisville public school. Adjoining the school lot is what is known as the Anderson lot. About twenty-seven or thirty yards north of the school lot and about eight feet west of the Anderson lot there are six persimmon trees. The defendant's feed wires and electric light wires pass through several of these persimmon trees about twenty feet from the ground. On the day of the injury to the plaintiff four boys about eleven years old attending the Ellisville public school planned to shock some one. In furtherance of this pan, one of the boys got a wire, which is referred to in the record as a "hay wire," bent one end of it, climbed one of the persimmon trees until up beyond the feed wire, dropped the bent end of the "hay wire" over the defendant's uninsulated feed wire, and called to the plaintiff to take hold of the "hay wire," which the plaintiff did, and at once both his hands and the heel and toes of one foot were severely burned. The feed wire of the defendant is insulated within the limits of the city of Laurel, but is uninsulated on its interurban line from the city limits of Laurel to and through the city of Ellisville. Plaintiff's testimony shows that the muscles of three fingers of his right hand

were so severely burned and drawn that the fingers were bent to the hand, rendering his right hand practically useless; that both hands were burned and the heel and toes of one foot. The testimony shows that the school children frequently climbed these persimmon trees and discovered that if they touched the feed wire they would get a shock; that they climbed the trees and touched the wire to get the shock. The trees had been climbed so much that they had been worn slick. There was some conflict in the testimony as to whether it was practical to insulate the feed wire, and there was some testimony for the defendant that a rusty wire such as the one used by these boys would transmit electricity from the feed wire even if it were insulated.

At the conclusion of the plaintiff's evidence, the defendant moved the court to exclude all the testimony introduced for the plaintiff and to direct a verdict for the defendant. This motion was overruled. After the conclusion of all of the testimony the plaintiff requested a peremptory instruction, which was also refused.

The first assignment of error challenges the correctness of the ruling of the court in refusing to direct a verdict for the defendant. It is insisted by the appellant that it is not liable even though it was negligence on its part to leave its feed wire uninsulated because it is contended that the act of the boy, Cooley, in attaching the hay wire to the feed wire, was an intervening efficient cause which constituted the proximate cause of the injury. In the opinion of the court it was negligence for the appellant to place and maintain an uninsulated feed wire through the branches of the trees, such as would attract boys of the age of these boys ten and eleven years of age, into the trees.

It is the settled law in this state that a person using electricity for business purposes is charged with the highest degree of care in the use of such electricity. In the case of *Temple* v. *McComb Electric Light & Power*

*Co.,* 89.Miss. 1, 42 So. 874, 11 L. R. A. (N. S.) 449, 119 Am. St. Rep. 698, 10 Ann. Cas. 924, this court, speaking through Judge Whitfield, said:

"The citizens of a municipality have the right to the reasonable use of the streets, not only on their surface, but above their surface. Many uses of the streets, or the spaces above the streets, may be readily imagined in cities, where buildings are erected twenty to fifty stories high, that might not be available in any ordinary town. The corporations handling the dangerous agency of electricity are bound, and justly bound, to the very highest measure of skill and care in dealing with these deadily agencies. The appellee had the right to such reasonable use of the streets for its poles and wires as the conditions existing at the time in the community warranted. On the other hand, the appellant had the reciprocal right to what was a reasonable use of the streets on his part. The rights of the appellant and the appellee are mutual and reciprocal. Neither could so use his own rights as to wantonly injure the other. These two correlative rights, if the law is obeyed, operate in perfect harmony with each other. There are no interferences, and no vacancies in the sphere of their harmonious movement.

"The declaration shows that the tree in which this boy was injured, by contact with an uninsulated wire, was an oak tree, a little tree abounding in branches extending almost to the ground—just such a tree as the small boys of any community would be attracted to, and use, in their play. Whether this appellee knew that this particular small boy was in the habit of climbing this tree or not, it is clear from the averments of the declaration that it did know the tree, the kind of tree, and, knowing that, knew what any person of practical common sense would know—that it was just the kind of a tree that children might climb into to play in the branches. It is perfectly idle for the appellee to insist

that it was not bound to have reasonably expected the small boys of the neighborhood to climb that sort of tree. The fact that such boy would, in all probability climb that particular tree, being the kind of tree it was, was a fact which, according to every sound principle of law and common sense, this corporation must have anticipated. The argument that it did. not almost suggests the query whether the individuals composing this corporation, its employees and agents, had forgotten that they were once small boys themselves. The immemorial habit of small boys to climb little oak trees filled with abundant branches reaching almost to the ground is a habit of which corporations stretching their wires over such trees must take notice. This court, so far as the exertion of its power in a legitimate way is concerned, intends to exert that power so as to secure, at the hands of these public utility corporations, handling and controlling these extraordinarily dangerous agencies, the very highest degree of skill and care.''

In the case of *Potera* v. *City of Brookhaven*, 95 Miss. 774, 49 So. 617, this court reiterated the ruling in the Temple case, *supra*. Speaking through Justice SMITH, the court said: .

''Corporations, private or municipal, engaged in the business of transmitting electricity along highways, are charged with the very highest degree of care for the safety of persons lawfully using the highway. They must not only properly erect their plants, but must maintain them in such conditions as not to endanger the public. *Temple* v. *Electric Light Co.*, 89 Miss. 1, 42 So. 874, 11 L. R. A. (N. S.) 449, 119 Am. St. Rep. 698; *Walter* v. *Baltimore Electric Light Co.* (Md.), 71 Atl. 953. The mere fact that this lamp, with the wires attached thereto, bearing their invisible, but deadly, current, had fallen into the street, unexplained, was *prima-facie* evidence of negligence on the part of appellee. '*Res ipsa loquitur.*' There being no explanation

of this fact, other than that shown by the evidence intro-
duced by plaintiff, which was to the effect.that the plant
of the city was out of repair, appellant was entitled to
recover, unless the jury believed that he was guilty of,
and chargeable with, contributory negligence.''

At the present time by statute of this state con-
tributory negligence is not a defense, but only goes to
minimize the recovery.  The injured boy in that case
was ten or twelve years old when he received the injury,
and the court held that the plaintiff should have been
presumed incapable of contributory negligence, unless
the presumption were rebutted by evidence; he should
not be held to the same degree of care required of adults
under like circumstances, but only to such care as he
was capable of exercising considering his age, experi-
ence, knowledge, and intelligence, and evidence to rebut
the presumption presents a question of fact for the jury.

In *McTighe, etc.,* v. *Johnson,* 114 Miss. 862, 75 So. 600,
which was a suit for damages for an injury caused by
the explosion of dynamite in which a child of tender
years was injured, the court held that a person using
dynamite has to use the highest degree of care and that
the defendant in that case was liable for an injury
caused to a child who found dynamite caps left in an
outhouse by the servants of the defendant which the
child finding the said caps turned over to his sister, who
was injured and who caused the explosion by manip-
ulating the cap with a hair pin.  In that case it was held
that a person leaving dynamite unguarded in a vacant
house should anticipate that the house would be reoc-
cupied by some one, and if reoccupied that small
children would be there to play in and about the premises
and that such dynamite might result in injuring them.

Applying these principles laid down in these cases,
we think that the defendant could have anticipated that
an injury would have occurred from such exposed wire
carrying a large voltage of electricity passing through

trees near the playground of the school building. It is not necessary that the particular injury should be anticipated, but that some injury would reasonably be anticipated, and, if the negligence of the defendant was a continuing and contributing cause of the injury, the defendant is liable.

In *Sioux City & Pacific R. R. Co.* v. *Stout,* 17, Wall. 657-665 (21 L. Ed. 745), the supreme court of the United States, in one of the turntable cases, discussing the question as to whether the defendant could anticipate an injury resulting from its negligence there involved, said:

"That the turntable was a dangerous machine, which would be likely to cause injury to children who resorted to it, might fairly be inferred from the injury which actually occurred to the plaintiff. There was the same liability to injury to him, and no greater, that existed with reference to all children. When the jury learned from the evidence that he had suffered a serious injury, by his foot being caught between the fixed rail of the road-bed and the turning rail of the table, they were justified in believing that there was a probability of the occurrence of such accidents."

It was the electricity in the feed wire that attracted the curiosity of the boys. It was this current of electricity exposed to the touch and situated as it was in trees, which boys would naturally be expected to climb, and of whose propensities or habits persons of ordinary intelligence would have knowledge, that prompted these boys to attach the wire thereto for the purpose of conveying this electric current so negligently exposed and situated to the plaintiff in this case who was injured. These children did not have knowledge of the dangers of electricity and of the use of it which would enable them to appreciate and understand its harmful effects. The defendant however knew, or should have known, that it was likely to cause injury when thus situated and exposed. It was the electricity in the wire, and not the

wire itself, that constituted the danger, and it was this electricity which the boys sought to convey from the feed wire to the plaintiff for the purpose of shocking the plaintiff. The deadly agent of electricity was at the place where the injury occurred partly through the negligence of the defendant. Its negligent transmission under the circumstances was a contributing cause of the injury. The act of the boys who ·attached the wire was not the sole cause of the injury. It is true that this particular injury, would not have happened had the boys not attached the wire to the feed wire, but it is also true that the injury would not have happened but for the negligence of the defendant in having an uninsulated· exposed wire situated like the one here involved was. So in our opinion the act of the boys was not an independent, efficient, intervening cause. The boys here were below the age of fourteen years, and incapable of fully ·appreciating the dangers of the wire and of playing with it. But the defendant knew, or ought to have known, of such danger, and ought to have guarded against it either by removing the trees from proximity to the wires, or by insulating the wire, or by both.

We think there is not sufficient merit in the other assignments of error to warrant a discussion of them in view of the settled law of the state and of the instructions given the defendant, except we will briefly discuss the assignment that the verdict is excessive.

The injured boy is about eleven years of age and suffered considerable pain, and the injury to his right · hand is permanent and will impair his usefulness through life. It is peculiarly a matter for the jury to determine the proper compensation for injuries of this kind, and unless there is something in the record which shows that the jury was biased, partial, or prejudiced in the case, and where the amount is not so large as to shock the conscience of fair and intelligent men, we will not disturb its finding. At the time of the jury the purchasing power of a dollar is one element that may be

properly considered in determining the number of dollars it requires to compensate for an injury. Looking carefully through the record, sensible of our obligations to administer the law and secure the litigants fair trial, we are unable to say in this case that the verdict is excessive. The verdict is therefore affirmed.

*Affirmed.*

ANDERSON, J., dissenting.