B. KULLMAN & CO. *et al.* v. SAMUELS *et al.**

(Division B.  Dec. 12, 1927.)

[114. So. 807.  No. 26747.]

1. MUNICIPAL CORPORATIONS. *Negligence of automobile driver striking pedestrian when making turn at intersection held for jury.*
   In action for death, resulting when deceased pedestrian was struck by an automobile making a turn at an intersection, evidence relative to automobile driver's negligence *held* for jury.

2. MUNICIPAL CORPORATIONS. *Instruction requiring automobile driver to have car under control when entering intersection held not erroneous under evidence.*
   Instruction, in action for death resulting when deceased pedestrian was struck by automobile, requiring driver to have his car under control so as to avoid striking any one when entering intersection, *held* not erroneous, in view of evidence thereon.

3. MUNICIPAL CORPORATIONS. *Automobile driver, on entering intersection, must give signals meeting requirements of due care, in view of circumstances.*
   An automobile driver is required, not only to give statutory signals before entering intersection to make turn, but also must give such other signals that will meet requirements of due care, in view of surrounding conditions and circumstances.

4. MUNICIPAL CORPORATIONS. *Instruction requiring automobile driver making turn at intersection to sound horn or warn pedestrians held not erroneous.*
   Instruction, in action for death of pedestrian struck by automobile when making turn at intersection, requiring automobile

driver to sound horn or give signal to warn pedestrians of approach of car, *held* not erroneous, in view of evidence taken in connection with circumstances and surroundings.

5. TRIAL. *Language of instruction should be given popular significance.*

Language of instructions as given by court should be given popular significance.

6. MUNICIPAL CORPORATIONS. *Instruction requiring automobile driver making turn at intersection to stop when blinded by other lights held not erroneous.*

Instruction, in action for death of pedestrian struck by automobile making turn at intersection, to effect that driver, when being blinded by other lights, should stop his car, *held* not erroneous, since, giving language its popular significance, instruction means only that driver should stop car as soon as reasonably possible, considering conditions with regard for safety of himself and others.

7. DEATH. *Ten thousand dollars for death of eighty-five year old woman held excessive.*

Ten thousand dollars for death of eight-five year old woman having no income and no estate *held* excessive.

---

*Corpus Juris-Cyc. References: Death, 17CJ, p. 1350 n. 6; Motor Vehicles, 42CJ, p. 916, n. 83; p. 917, n. 99; p. 920, n. 30, 33; p. 965, n. 79; p. 966, n. 96; p. 971, n. 41; p. 1250, n. 11; p. 1275, n. 96; p. 1283, n. 27; Trial, 38Cyc, p. 1521, n. 81; p. 1777, n. 66. Contributory negligence of pedestrian injured by automobile at street intersection as question for the jury, see annotation in 3 L. R. A. (N. S.) 345; 2 R. C. L. 1186; 1 R. C. L. Supp. 725; 4 R. C. L. Supp. 148; 5 R. C. L. Supp. 135; 6 R. C. L. Supp. 130. On excessiveness of verdicts in actions for personal injuries resulting in death, see annotation in L. R. A. 1916C 820; 48 A. L. R. 817.

Appeal from circuit court of Adams county.

HON. R. L. CORBAN, Judge.

Action by Mrs. Alice Samuels and others against B. Kullman and another, doing business as B. Kullman & Co., and another. Judgment for plaintiffs, and defendants appeal. Affirmed on condition that plaintiffs enter a remittitur.

*E. H. Ratcliff* and *George Butler,* for appellant.

It was error for the court to instruct the jury that Michael Kullman was bound to "at once" have stopped his car when he became blinded by the lights. This in effect was a peremptory instruction for the appellees. If this instruction was proper, then the court should have peremptorily instructed the jury to find for the appellees, plaintiffs in the court below. Kullman was not negligent under the facts shown by the record, in not, at once, stopping his car when he became blinded by the headlights of Hall Wilson's car. If one stops all must, or the danger would be thereby increased, and if all stop, how can anyone reach his destination? In reason, traffic must be permitted to move at all times, but one driving, when blinded by a light, must do so in a careful and prudent manner, with due regard for the safety of others and what is careful and prudent, under the particular circumstances, and conditions, is a question for the jury and not for the court. *Devote* v. *United Auto Transportation Co.,* 128 Wash. 604, affirmed on rehearing, 130 Wash. 707; *Melton* v. *Manning* (Tex. Civ. App.), 216 S. W. 448.

We have found no case which lays down the strict rule announced in the instruction complained of in this case. There are numerous cases to the effect that it is a question for the jury whether or not under such circumstances, the driver of an automobile exercised due care and caution, but in no case has the court told the jury as a matter of law that it was the duty of the driver of an automobile to at once stop his car when blinded by the glare of headlights while proceeding across an intersection of two streets situated as the streets in question were. *Mathers* v. *Bottsford* (Fla.), 97 So. 282, 32 A. L. R. 881, holds the driver of an automobile, when blinded by the glare of the headlights, to a very high degree of care, but even that case does not go to the point of holding as a matter of law, the driver is negligent if he does not stop "at once" when so blinded.

This instruction is also erroneous and misleading, because not based upon facts shown in the record. The court erred in giving the appellees their first instruction. This instruction is a lengthy one, and predicates liability on three grounds. In it the jury is told that if Kullman at the time of and after turning in Main street to go into Union street, (a) did not have his car "under control" so as to avoid striking pedestrians in the street, or, (b) "that he was not keeping a proper lookout for pedestrians" at the time of such turning, or, (c) "did not sound his horn or give a signal" so that any pedestrian, who might then be crossing or in the act of crossing Union street, might be warned of his approach from Main street into Union street, and as a result thereof Mrs. Sanford was injured, then they would find for the plaintiffs. This instruction is erroneous for several reasons. In the first place, there is no evidence whatsoever that Kullman did not have his car under control. To the contrary it appears that he was driving very slowly, not exceeding eight miles per hour. In the second place, he was not required to sound his horn or give a signal, except before proceeding to make the turn. The judgment is excessive. *Railroad Co.* v. *Moore,* 101 So. 768; *G. & S. I. R. Co.* v. *Boone,* 120 Miss. 632; *Hardwood Lbr. Co.* v. *Cinquimani,* 137 Miss. 72. The "recovery cannot be enlarged on account of the horror and terrible shock of a tragedy of this kind" and there is no element of punitive damages. *G. & S. I. R. Co.* v. *Boone, supra;* 19 R. C. L. 221; *Cumberland Tel. & Tel. Co.* v. *Pitchford,* 30 So. 41; L. R. A. 1916C, p. 885N. Looking at the matter from one standpoint, there is nothing that can compensate the appellees for the loss of their mother. The test is not what you would demand before you would consent for your mother to be killed under such circumstances. The question is not what sum of money would be sufficient to induce a person to undergo voluntarily the pain and suffering for which recovery is sought, not what it would cost to hire some

one to undergo it. *Standard Oil Co.* v. *Tierney,* 92 Ky. 367; *Baker* v. *Pa. Co.,* 142 Pa. St. 503; *Goodhart* v. *Pa. R. R. Co.,* 177 Pa. St. 1; 8 R. C. L. 462.

*L. A. Whittington,* for appellees.

Peremptory instruction was justified under the facts and evidence and the law. We consider this proposition now, before answering the errors complained of in the instructions given by the court to appellees, for if we are correct in this view, errors, if any, in the instructions given will be unavailing to appellants. See *Ulmer* v. *Pistole,* 115 Miss. 485; *Eiseman* v. *Griffith,* 167 S. W. 1142; *Hornbuckle* v. *McCarty,* 25 A. L. R. 1508; *McDonald* v. *Yoder,* 101 Pac. 468; *Kelly* v. *Schmidt· & Zeigler,* 76 So. 250; 8 Thompson on Negligence (White's Supplement), par. 1340 (h).; *Warner* v. *Breitholf,* 181 Pac. 808; *Baker* v. *Savas,* 172 Pac. 672; *Myers* v. *Bradford,* 201 Pac. 471. Upon the question of warning to be given any pedestrian, see section 5778, Hemingway's Code 1917; *Carlston* v. *Mesuberger,* 204 N. W. 432; *Courvosier* v. *Burger,* 215 Pac. 93.

As to the rate of speed, or as to whether or not appellant, Michael Kullman, had his car under control, see section 6680, Hemingway's Code. If the statute is to be made applicable at all, under what circumstances, or under what facts, would it be more necessary to apply it than the circumstances and facts of this case? *Irwin* v. *Judge,* 71 Atl. 572; *Lorach* v. *Rhinehart,* 89 Atl. 967.

Instructions given to appellees were correct. *Hennessey* v. *Taylor,* 189 Mass. 583, 3 L. R. A. (N. S.) 345 and note; *Mudenberg* v. *Kavanaugh,* 17 Ohio App. —; *Hammond* v. *Morrison,* 100 Atl. 154; *Jaquith* v. *Worden,* 48 L. R. A. (N. S.) 827. Was the judgment excessive? See *Ulmer* v. *Pistole,* 115 Miss. 485.

In *Hardwood Lumber Company* v. *Cinquimani,* 137 Miss. 72, this court passed upon the item solely of damages for pain and suffering. In that case, the evidence

showed that the deceased was injured some time between seven and nine o'clock in the morning, and lived until about one o'clock in the afternoon of that same day. He was injured by being struck on the head by a piece of timber which fell from a flat car, causing a fracture of his skull and bleeding from the ears, nose and mouth. The physician testified that when he first saw the injured man he was in an unconscious or semi-conscious condition, but that there were intervals of apparent consciousness and during these intervals, he gave evidence of intense pain and suffering. In that case, this court held that five thousand dollars was sufficient damage for the pain and suffering. In the instant case, the evidence shows that the deceased was injured on the 16th day of February and died on the 25th. The evidence further shows that she suffered intense pain. The doctor testified that they were unable to give her sufficient opiate and that it was unwise to give sufficient opiate to entirely relieve the pain; that she was conscious for most of the time. The injuries themselves were exceedingly severe. Eleven of the ribs in her body being broken, some of them broken in pieces, her head injured thru to the skull. Under these facts, judgment in excess of five thousand dollars for this element of damage alone would not be excessive, and when to that amount, is added whatever expectancy of life she might have had, and there was some, and the expenses of last illness and loss of her companionship, we say to this court that a judgment of ten thousand dollars is not indicative of prejudice, passion, partiality or corruption on the part of the jury. See 17 C. J. 1088.

Argued orally by *George Butler,* for appellants, and *L. A. Whittington,* for appellee.

ANDERSON, J., delivered the opinion of the court.

Appellees brought this action in the circuit court of Adams county against appellants B. Kullman and H.

Kullman, doing business as B. Kullman & Co., and
Michael Kullman, an employee of B. Kullman & Co.,
for damages for the death of Mrs. Sanford, the mother
of appellees, caused by the alleged negligence of appel-
lant Michael Kullman, while engaged in the business of
B. Kullman & Co., in running over and killing Mrs. San-
ford with an automobile driven by said appellant Mi-
chael Kullman.   There was a verdict and judgment in
the sum of ten thousand dollars, from which judgment
appellants prosecute this appeal.

The tragedy occurred at night at the intersection of
Main and Union streets in the city of Natchez.   Main
and Union streets intersect each other at right angles;
Main running east and west, and Union running north
and south.   Mrs. Sanford was stricken down and injured
by the automobile driven by appellant Michael Kull-
man.   The intersection of Main and Union streets was
well lighted.   At the intersection of Main and Union
streets the former is about thirty feet in width, and the
latter about twenty-seven feet.   In the center of the
intersection of the streets there is what is known as a
silent policeman.   In turning out of one of these streets
into the other, drivers of motor vehicles were required
to pass around the right of this silent policeman.   Mrs.
Sanford was traveling east on the north side of Main
street, on her way to church.   Wilson, one of the wit-
nesses in the case, was going south on Union street, in
his automobile.   Appellant Michael Kullman was driv-
ing his car on Main street, going east, the same direc-
tion Mrs. Sanford was going, approaching the intersec-
tion of that street with Union street.   He testified that,
immediately before or about the time he entered the in-
tersection of the streets, he blew the horn of his automo-
bile.   The witness Wilson, driving south on Union street
approaching the intersection of that street with Main,
testified that he did not know whether appellant Kull-
man gave any signal or not as he approached the in-
tersection of the streets.   He testified further that he

saw Mrs. Sanford as he approached the intersection in his car, standing on the northwest corner of the intersection of the streets; that she looked to the right and to the left, and then proceeded east in a running walk. Mrs. Sanford was knocked down and run over by the car driven by Kullman near the northeast corner of the intersection of the streets. At the time she was struck by the car she had nearly reached the sidewalk on the north side of Main street, and on the east side of Union street. Wilson testified that, when he first saw Mrs. Sanford after the accident, she was under the car driven by Michael Kullman. The evidence tended to show that the point where she was taken from under the car was several feet north of the northeast corner of the intersection of the streets. Appellant Michael Kullman testified, and his evidence was undisputed by any eyewitness, that as he entered the intersection of the streets, and while making the turn north into Union street, he was traveling something like eight miles an hour; that at some point after he entered the intersection and was making the turn north into Union street he was blinded, probably by the lights of Wilson's car coming south; that he did not see Mrs. Sanford, although he was keeping a careful lookout, until he was so close to her that it was impossible to stop before striking her. From the silent policeman in the center of the intersection of the streets to the northeast corner of their intersection it is only about twenty-two feet.

Appellants contend that the court erred in not directing a verdict in their favor upon the ground that the evidence of appellant Michael Kullman, which was undisputed by any eyewitness, made a case of no liability. It is not always that the undisputed evidence of a witness it to be taken as true. The jury, in connection with such evidence, should consider and give due weight to the surrounding circumstances and physical facts. As stated, the intersection of these two streets was lighted. As appellant Michael Kullman entered the inter-

section and was making the turn north into Union street, Mrs. Sanford must have been traveling across Union street at some point only a short distance from him. She could not have been but little more than thirty or forty feet away. There was nothing to obstruct his view of her as she was crossing. The jury might have found from these circumstances and physical facts that his testimony that he was keeping a careful lookout was untrue; furthermore, from the fact that Mrs. Sanford was found under the car of appellant Kullman several feet north of the northeast corner of the intersection of the streets, the jury might have found that he was driving so rapidly that he struck her near the northeast corner of the intersection and his car dragged her that distance north; in other words, that his evidence that on entering the intersection and making the turn he was driving at about eight miles an hour was untrue. We think, therefore, the question of negligence was one for the jury.

Appellants assign and argue as error the action of the court in giving the first and second instructions for appellees. Those instructions follow in the order given:

"The court further instructs the jury for the plaintiffs that, if you believe from the evidence in this case that Michael Kullman, the driver of the car inflicting the injuries, at the time of and after turning in Main street to go into and upon Union street, did not have his car under control só as to avoid striking any person or pedestrian in the street, or crossing the street, at or near the intersection of Union street with Main street, or if the jury believe from the evidence that he was not keeping a proper lookout for pedestrians at such time of turning in Main street to go into Union street and before reaching the intersection of Union street with Main street, who might then be in said street at or near the intersection of Union with Main street, or who might be crossing said Union street at said intersection, or if the jury believe from the evidence that he did not sound

his horn or gave a signal so that any pedestrian might be warned of his approach from Main street into Union street, who might then be crossing or in the act of crossing Union street at the point of its intersection with Main street, and if the jury further believe that, as a result of his failure, if they believe from the evidence, he did so fail, to keep a proper lookout for pedestrians at said intersection of Union street with Main street, or to sound his horn, or to keep his car under control so as to avoid striking any one or any pedestrian who might then be in the street or crossing the street at the intersection of Union with Main street, he ran into and against the deceased, Mrs. Isabel J. Sanford, inflicting upon her injuries from which she died, then, in either of such failures, it is the duty of jury to find for the plaintiffs and against all the defendants B. Kullman, H. Kullman, and Michael Kullman.

"The court further instructs the jury for the plaintiffs that, if they believe from the evidence in this case that the Michael Kullman, the driver of the car, when he turned in Main street to go from Main street into and upon Union street, and before he reached the line of intersection where Union street touches Main street, and where pedestrians were accustomed to cross Union street, was so blinded by the lights of an approaching car or any other lights so as to prevent him from seeing any pedestrian crossing Union street where it intersects Main street, or from seeing the deceased, Isabel J. Sanford, in said street and before striking her, or from seeing her too late to avoid striking her while in said street, then it was the duty of the said driver, Michael Kullman, to at once have stopped his car, until he could ascertain whether his way was clear or whether any pedestrian was in the street; and in this case the court instructs the jury that, if they believe from the evidence that the said Michael Kullman was so blinded by the lights of an approaching car, or any other lights, whereby he was prevented from seeing any pedestrian in the

street intersection of Union with Main, before reaching such intersection, and that he failed to stop his car and ascertain whether any pedestrian was crossing Union street at said intersection, and that, as a result of his failure to stop his car at once upon being blinded, he ran into and against the deceased, Isabel J. Sanford, inflicting upon her injuries from which she died, then it is the duty of the jury to find for the plaintiffs against all the defendant B. Kullman, H. Kullman, and Michael Kullman.''

It will be observed that the first instruction predicates liability upon three grounds: (1) That if the evidence showed appellant Michael Kullman, in entering Main street and turning north into Union street, did not have his car under control so as to avoid striking pedestrians; or (2) that he was not keeping the proper lookout for pedestrians at the time; or (3) if he did not sound his horn, or give any signal so that pedestrians crossing Union street might be warned of his approach from Main street into Union street, the jury would be authorized to return a verdict for appellees. This instruction is criticized on three grounds:

(1) It is argued that there was no evidence whatsoever that appellant Michael Kullman did not have his car under control; that, to the contrary, it appears that he was driving not exceeding eight miles an hour. What we have said in discussing the question whether appellants were entitled to a directed verdict is a sufficient answer, we think, to this contention. We are of opinion that the surrounding circumstances and the physical facts were sufficient to authorize the jury to disbelieve the testimony of appellant Michael Kullman that he was driving so slowly as to have his car under control.

(2) Appellants say that the instruction was erroneous because under the law appellant Michael Kullman was not required to give any signal, except before entering the intersection to make the turn north into Union street; that his testimony that he gave the signal

then, was undisputed; and that therefore that question should not have been submitted to the jury. Appellants argue that no other signal was required. Under the law the driver of an automobile is not only required to give the statutory signals, but the surrounding conditions and circumstances may be such that, in order to meet the requirements of due care, he should give other signals. The giving of the statutory signals is the least the law requires of a driver of a motor vehicle. After giving the statutory signals, he cannot close his eyes. If he sees a person in danger from his car, he must do what is reasonably necessary to avoid injuring him. Under such surroundings as would indicate that an additional signal would relieve the danger, reasonable care requires that such signal be given. The evidence tended to show that Mrs. Sanford was crossing Union street as appellant Michael Kullman was driving his car into the street intersection and turning north into Union street; that she was in full glare of the electric lights by which the street intersection was lighted; and that therefore, in the exercise of reasonable care, he either saw, or should have seen, her.

(3) Appellants criticize the instruction further upon the ground that that part of the instruction which told the jury that, if appellant Michael Kullman failed to sound his horn, or give any signal so that pedestrians crossing Union street might be warned of the approach of the car from Main street into Union street, they should return a verdict for the appellees, was error, because of the fact that there was no evidence whatever to support such an instruction. The witness Wilson showed by his evidence that he was in hearing distance, and did not remember hearing any signal from appellant's (Michael Kullman's) car as he entered the intersection and turned north into Union street. If such a signal had been given, Mrs. Sanford could have heard it, as she was only a few feet away, probably not more than thirty or forty feet at the outside. Judging from

her conduct, she evidently heard no signal, because she did not heed it. Considering the interest of the witness Michael Kullman in connection with these circumstances and surroundings, we think the criticism of the instruction is not well founded. To say the least of it, it was not calculated to mislead the jury.

Appellants' principal ground of criticism of the second instruction is that the court told the jury in that instruction that appellant Michael Kullman was bound to at once stop his car when he became blinded by the lights. We think a fair interpretation of the evidence shows that, if appellant Michael Kullman was blinded by any lights while entering the street intersection and turning into Union street, it was the lights of the car of the witness Wilson. It is argued that the instruction placed too much of a burden on the driver of the car when it told the jury that he should have stopped *at once* when he became blinded by the lights. It is argued that the driver of the car could not have stopped at once; and, furthermore, that, in stopping the car the driver was bound to regard other traffic, he could not stop at once and run the risk of injuring other persons; that all he was required to do under such circumstances was to use diligence and judgment; that the instruction meant, as a matter of law, that the driver of the car was negligent, because he did not stop *at once.* Language of instructions should be given its popular significance. The jury knew that the driver of a car, even going as slowly as eight miles an hour, could not stop it instantly; in fact, they knew that that would be impossible. The instruction meant that, as soon as the driver of the car realized that he could not see ahead on account of being blinded by the lights, he should have taken steps at once to stop his car as soon as he reasonably could, considering the surrounding conditions, including other traffic. The instruction did not mean that the driver of the car should have stopped instantly at the peril of his own life or limb, or the life or limb of

others traveling the intersection of these streets. Putting it differently, and the jury as reasonable men must have so understood it, when the driver of the car was blinded by the lights, in the exercise of reasonable care he should have stopped his car as soon as he could safely do it, having regard for the safety of himself and others. We conclude, therefore, that there was no error in giving the second instruction for appellees.

Appellants assign and argue as error the action of the court in overruling their motion for a new trial upon the ground that the verdict was excessive. The verdict was for ten thousand dollars. Mrs. Sanford was about eighty-five years of age at the time of her death. She resided with one of her daughters, Mrs. Ballou, in the city of Natchez. She had no income, and no estate. She was dependent upon appellees, her children, for support. Her injury consisted of one or more wounds on the head, several of her ribs were broken, and one of the broken ribs had punctured one of her lungs. She lived nine days, and suffered, but her suffering was alleviated as much as possible by the administration of opiates. Her doctor's bill and hospital expenses amounted to between seven hundred and eight hundred dollars. Appellees, her children, lost her companionship and society, but, according to the course of nature, that could have lasted for only a very short time. The elements of damage to Mrs. Sanford consisted alone of mental and physical suffering, her doctor's bill and hospital expenses, and damages to appellees, her children, in the loss of her companionship and society. Appellees received no pecuniary benefit whatever from her, and there was no expectancy of any. In view of these facts, we think the verdict was too large; in fact, so large as to evince passion or prejudice on the part of the jury. We are of opinion that any verdict in this case above two-thirds of the amount given would be shocking to the enlightened conscience. The trial court, therefore, should have granted a new trial on that ground.

If within ten days from the time this case is handed down appellees shall enter a remittitur reducing the judgment one-third, or to six thousand six hundred sixty-six dollars sixty-seven cents, the judgment will be affirmed; otherwise the case will be reversed for a new trial on the question of damages alone.

*Affirmed with remittitur.*