I dissent.
I would not address the certified questions as the majority of this Court has. To me, the certified questions require us to reexamine the conflict between the purposes for awarding punitive damages and our rule of nonapportionment of damages among joint tort-feasors for an indivisible injury. Our previous decisions have ignored this conflict and answered the questions presented in a piecemeal fashion. These certified questions in a wrongful death context require me to address these problems head-on, and to reexamine the nature of damages that can be recovered under the Alabama Wrongful Death Statute (Sometimes called the "Homicide Statute"), § 6-5-410, Code 1975.
The majority, in effect, reposes in Steenhuis v.Holland, 217 Ala. 105, 115 So. 2 (1927), which allowed a pro tanto settlement in a wrongful death case, and responds to the first certified question as follows: The pro tanto releases of two defendants have an effect on the trial of the third remaining defendant who is charged with contributing to the death. By doing this, the majority ignores the fact that, due to the way we have interpreted our Wrongful Death Statute, the result in Steenhuis may be incorrect and inconsistent with other opinions of this Court and with the underlying public policy that those decisions were attempting to enforce, and the fact that it raises constitutional problems.
Schering Corporation contends that our wrongful death law has focused on the result (death) of a tort-feasor's wrongful act, omission, or negligence, rather than on the nature of the wrongful act, omission or negligence. InRobbins v. Forsburg, 288 Ala. 108, 110, 257 So.2d 353,355 (1971), we held that in a wrongful death case Alabama law requires "a single verdict, fixing a lump sum regardless of the [individual] culpability of tortfeasors." A cause of action for wrongful death is one and indivisible. In General MotorsCorp. v. Edwards, 482 So.2d 1176, 1190 (Ala. 1985), we held that "death is certainly an indivisible injury." In Exparte City of Huntsville, 456 So.2d 72, 74 (Ala. 1984), overruled on other grounds, Diemert v. City of Mobile,474 So.2d 663 (Ala. 1985), we quoted from W. Prosser, TheLaw of Torts, § 52 at 315-16 (4th ed. 1971): "Certain results, by their very nature, are obviously incapable of any logical, reasonable, or practical division. Death is such a result. . . ." Therefore, we have not allowed an apportionment of damages in wrongful death cases. Bell v. Riley BusLines, 257 Ala. 120, 57 So.2d 612 (1952).
Schering argues that if in wrongful death cases, damages are only punitive and punish for the single individual injury (death) and are not for each individual wrongful act or omission, or act of negligence that proximately caused such death, then any settlement by a personal representative with any tort-feasor satisfies the societal interest of punishing for that death *Page 1048 
and prohibits the personal representative from recovering from any other tort-feasors. What of Steenhuis v. Holland, supra, which, by the rule "do," permitted a personal representative to proceed against a tort-feasor after entering into a pro tanto settlement with another tort-feasor? And what effect would such a ruling have on our strong policy of encouraging settlement and compromise? Maddox v. Druid CityHospital Board, 357 So.2d 974 (Ala. 1978); Steenhuisv. Holland, supra.
 I. APPORTIONMENT OF DAMAGES
If a plaintiff is damaged as a result of the wrongful act, omission, or negligence of another, the plaintiff is entitled to full compensation for all damages proximately caused by such wrongful act, omission, or negligence. Beloit Corp. v.Harrell, 339 So.2d 992, 998 (Ala. 1976); 1 Sutherland,Damages §§ 1 2 (1916). If a plaintiff is damaged as a result of the combined or concurring wrongful acts, omissions, or negligence of others, the plaintiff is entitled to full compensation for all damages proximately caused by such wrongful acts, omissions, or negligence. Layman v.Hendrix, 1 Ala. 212, 214 (1840); Apportionment ofPunitive Damages 38 Val.L.Rev. 71, 71-72 (1952). Theinterest of the uncompensated victim must always be keptforemost in mind in dealing with compensatory damages. Laymanv. Hendrix, supra. The principle of joint and several liability allows the victim to shift liability among multiple tort-feasors and gives the victim the maximum assurancethat he or she will receive full compensation for all damagessustained. Layman v. Hendrix, supra. There are strong policy considerations and almost universal application of the joint and several liability doctrine in the assessment of compensatory damages; therefore, there is and should be no apportionment of compensatory damages among joint tort-feasors. T. Christensen, The Apportionment of Punitive Damages AmongJoint Tortfeasors, 25 Ariz.L.Rev. 579 (1983).
What of punitive damages? In Alabama we have held that "the plaintiff is without legal rights to them
[punitive damages], as that right attaches to actual damages suffered. Comer v. Age-Herald Pub. Co., 151 Ala. 613,44 So. 673, 13 L.R.A. (M.S.) 525 (1907). Such damages
[punitive] may be even forbidden, or affirmativelywithheld, by legislative enactment, so far as impinging rightsof property are concerned." Dowling, Adm'r v.Garner, 195 Ala. 493, 496, 70 So. 150, 151-52 (1915), quoting Louisville N.R.R. v. Street, 164 Ala. 155,51 So. 306, 20 Ann.Cas. 877 (1909) (emphasis supplied). "Most courts no longer give deference to a plaintiff's claim of a right to punitive damages." T. Christensen, TheApportionment of Punitive Damages Among Joint Tortfeasors, 25 Ariz.L.Rev., 579, 585 (1983).
Since punitive damages are not to compensate a victim for loss but to punish and deter, the state alone is considered the true party plaintiff, and in seeking punitive damages, a plaintiff is an agent of the state and not a victim. Note,Apportionment of Punitive Damages, 38 Va.L.Rev. 71, 73 (1952). Such damages are awarded as a matter of discretion by the trier of fact. This Court has held that trial and appellate courts are forbidden to review and revise a punitive damages award under the Homicide Statute "'on the sole ground of theinadequacy of the sum assessed, that could only be, and was, we must assume, so assessed, as the jury's idea of thepunishment due the wrongdoer'" (emphasis supplied).Dowling, Adm'r v. Garner, supra, 195 Ala. at 487,70 So. at 152. Whether we will adhere to this precedent if it is again presented to us is not now before us, but this view is consistent with the criminal law principle that prohibits an increase in a sentence in a criminal case by a trial or appellant court after the sentence is imposed. Rice v.Simpson, 274 F. Supp. 116 (1967), affirmed, 396 F.2d 499
(5th Cir. 1968), affirmed, 395 U.S. 711, 89 S.Ct. 2072,23 L.Ed.2d 656 (1969). Because the purpose of punitive damages is not to compensate the plaintiff, in considering punitive damages there is no "amount" to which an uncompensated victim is entitled; and, therefore, there is no need for giving anyone maximum assurance that a certain *Page 1049 
amount will be recovered. When considering punitive damages, the defendant's right to fair punishment must be paramount to giving the plaintiff maximum assurance that he or she will recover the full amount of punitive damages from all tort-feasors, for the plaintiff has no right to such damages and they are not awarded to compensate the plaintiff. Joint and several liability, with its emphasis on the interests of the uncompensated victim, is in conflict with the purposes of punitive damages, for in Alabama and most states there is no victim who is entitled to compensation. A recovery of punitive damages by execution from a defendant who does not deserve the penalty or who deserves a lesser penalty based upon his or her fault, while others who are truly culpable and deserve the penalty go unpunished raises the spectre of unconstitutionality, Aetna Life Insurance Co. v.Lavoie, 475 U.S. 813, 106 S.Ct. 1580, 1589, 89 L.Ed.2d 823
(1986), and is not consistent with the policy underlying punitive damages. Roberson v. Ammons, 477 So.2d 957
(Ala. 1985); Bowles v. Lowery, 5 Ala. App. 555,59 So. 696 (1912).
Alabama does not permit contribution among joint tort-feasors, Crigler v. Salac, 438 So.2d 1375 (Ala. 1983), which is permitted either by statute or judicial decision in most states. T. Christensen, The Apportionmentof Punitive Damages Among Joint Tortfeasors, supra, at 585-86 (nn. 75 and 76). Therefore, in Alabama, the punishment of defendants, when there are more than one, remains where the plaintiff imposes it.
Merryweather v. Nixon, 101 Eng.Rep. 1337 (K.R. 1799), is the progenitor of the joint and several liability doctrine as to both compensatory and punitive damages. The basis for the preferential treatment of the plaintiff insofar as punitive damages are concerned stems from the traditional unwillingness of courts to entertain or adjust the claims of convicted intentional tort-feasors. Morris,Punitive Damages in Tort Cases, 44 Harv.L.Rev. 1173, 1192-93 (1931). The spectre of unconstitutionality Richmond D.R.R. v. Freeman, 97 Ala. 289, 297, 11 So. 800 (1892) and Aetna Life Insurance Co. v. Lavoie, supra, should overrule outmoded pieties of equity. Apportionment of punitive damages received strong support in Justice Jones's opinion concurring in the result in Black Belt Wood Co. v.Sessions, 514 So.2d 1249 (Ala. 1987). In regard to our nonapportionment of punitive damages, he wrote: "The threshold test of validity of any law ought to be two-fold: 1) It ought to make sense; and 2) it ought to be honest."514 So.2d at 1267. Justice Jones concluded that applying the joint and several liability doctrine, which prohibits apportionment, to punitive damages meets neither part of this test. I agree. In permitting the apportionment of punitive damages, this Court would not be "the first by whom the new are tried,"[1] for at least 16 states have approved the apportionment of punitive damages. T. Christensen, The Apportionment of PunitiveDamages Among Joint Tortfeasors, p. 579 (note 10).
If I could speak for the Court, I would hold that in all cases in which the trial commences after the release of this opinion, the jury should be instructed that if it finds that two or more defendants are liable for punitivedamages, under the instructions given to it by the court as to when punitive damages are appropriate, it shall apportion the damages among the several defendants in accordance with each defendant's degree of culpability.
 II. DAMAGES IN WRONGFUL DEATH CASES
"Given that only punitive damages are recoverable in an Alabama wrongful death suit" (the predicate for the certified questions), I now address the peculiar interpretation that this Court has given our wrongful death statute (§ 6-5-410, Code of Alabama 1975, and its predecessors). Since there has been no "compensation" for death, but only punishment, are we to allow *Page 1050 
apportionment of all damages in wrongful death cases, but allow apportionment of only those damages in excess of those that compensate in cases involving personal injury, fraud, etc.?
Certainly, there is a "victim" in a case involving death, just as there is in a personal injury case. Certainly, there is a loss that can be partially compensated for in a case involving death, just as there is in a personal injury case. In a case involving death, there is an interest of an uncompensated victim, just as there is in a personal injury case, and this interest should be kept foremost in mind in dealing with the compensable part of the loss and should be given maximum assurance that full compensation will be received for that compensable part of the loss.
To allow apportionment of all damages in a wrongful death case, then, would give primacy to the defendant's right to fair punishment rather than to an uncompensated victim's right to maximum assurance that he or she will receive full compensation for all damages sustained.
This is not the first time that the Court's peculiar interpretation of the damages aspect of our wrongful death statute has called into question its application of principles of basic fairness and suggested constitutional defects. SeeCarter v. City of Birmingham, 444 So.2d 373 (Ala. 1983), cert. denied, 467 U.S. 1211, 104 S.Ct. 2401,81 L.Ed.2d 357 (1984), in which the Court held that 42 U.S.C. § 1983
actions cannot be maintained in Alabama against municipalities for wrongful death, even though § 1983 actions could be maintained if the same act caused only personal injuries, because municipalities are immune from punitive damages under § 1983. Justice Jones, in a strong dissent to this portion of the opinion, (pp. 379-80) included this: "In my opinion, the Supremacy Clause of the United States Constitution precludes our rejection of the § 1983 claim against the City." Therefore, before I address the issue of apportionment of damages in wrongful death cases, I must review the damages aspect of wrongful death cases.
Other than strong judicial precedent, there is nothing embodied or expressed in § 6-5-410, Code 1975, that makes the damages recoverable for wrongful death "only punitive."
"[A]nd recover such damages as the jury may assess . . ., for the wrongful act, omission or negligence . . . whereby the death . . . was caused, provided the [decedent] could have commenced an action for such wrongful act, omission or negligence if it had not caused death." § 6-5-410. Clearly, the Legislature did not use such terms as "vindictive damages" (§ 6-6-148, Code 1975), which was a phrase used in statutes enacted by the Legislature prior to 1860, the time of the enactment of the first wrongful death statute that the Court interpreted as permitting only punitive damages. See BlackBelt Wood Co. v. Sessions, supra, at 1260-61. The present statute did not use the words "exemplary damages", which were used in what is now § 6-5-71, Code 1975, Act No. 191, 1909 Ala. Acts, and in Code 1923, §§ 5674, 5675; and Code 1940, T. 7, §§ 121, 122. The Legislature did not use the term "exemplary or punitive damages," which it used in what is now § 6-6-296, Code 1975, which phrase was also used when this section appeared as § 7470, Code 1923, and T. 7, § 955, Code 1940. It is obvious that the Legislature knew how to enact legislation authorizing punitive damages. The words of the present statute do not indicate that only punitive damages are recoverable.
"[S]uch damages":
"Such," as an adjective, is defined as "of a kind or character about to be indicated, suggested, orexemplified" and "having a quality to a degree to beindicated." Webster's Third New InternationalDictionary, Unabridged (1971) (emphasis supplied).
The only things "indicated, suggested, or exemplified" in the remainder of the statute as to the kind, character, or quality of "such" are "as the jury may assess . . . for the wrongful act, omission or negligence . . . whereby the death . . . was caused" and "provided the [decedent] could have commenced an action for such wrongful *Page 1051 
act, omission or negligence if it had not caused death."
"Such" also means "having a quality already or just specified — used to avoid repetition of a descriptive term."Webster's, supra. No descriptive term precedes "such" in the statute. The statute begins with the clause "A personal representative may commence an action and recover such damages. . . ." Therefore, the essence of "such" must be determined from phrases that follow it.
The word "damages" does not import "only punitive damages." "Damages" is defined as pecuniary compensation or indemnity, which may be recovered in the courts by any person who has suffered loss, detriment, or injury, whether to his person, property or rights, through the unlawful act or omission or negligence of another. Richmond D.R.R. v. Freeman,97 Ala. 289, 295, 11 So. 800 (1892); Rayford v.Rayford, 456 So.2d 833, 834 (Ala.Civ.App. 1984);Black's Law Dictionary (Rev. 4th ed. 1968); C.Gamble and D. Corley, Alabama Law of Damages, p. 1 (1982).
"May assess":
"May" is defined as "to have the power: be able," "have the ability or competence to," "have permission to," "have liberty to," and "be in some degree likely to." Webster's, supra. Black's, supra, defines "may" as: "An auxiliary verb qualifying the meaning of another verb by expressing ability, competency, liberty, permission, possibility, probability or contingency."
"Assess" is defined as "to determine the rate of" and "to determine the amount of or impose." Webster's, supra.Black's, supra, defines "assess" as: "To ascertain; fix the value of. To fix the amount of damages or the value of the thing to be ascertained. To impose a pecuniary payment upon persons or property."
The mere fact that "as the jury may assess" follows "such damages" does not make "such damages" only punitive any more than such words would make them only compensatory.
Justice Maddox, in a special concurrence in Maples v.Chinese Palace, Inc., 389 So.2d 120, 125, (Ala. 1980), wrote:
 "I think that the words 'such damages as the jury may assess' are broad enough to include the assessment of compensatory damages when injury proximately results from the illegal sale [of liquor to a minor], and punitive damages when death proximately results from the illegal sale."
This was in reference to § 6-5-70 ("Furnishing liquor to minors"), Code 1975, known as the Civil Damage Act, which is as follows:
 "Either parent of a minor, guardian or a person standing in loco parentis to the minor having neither father nor mother shall have a right of action against any person who unlawfully sells or furnishes spirituous liquors to such minor and may recover such damages as the jury may assess. . . ." (Emphasis supplied.)
If the language in § 6-5-70 is broad enough to be either compensatory or punitive, what makes it "only punitive" in § 6-5-410?[2]
In 1956, 69 years after this Court first interpreted what is now § 6-5-410 as allowing only punitive damages,Alabama Great S.R.R. v. Burgess, 116 Ala. 509,22 So. 913 (1897), the Alabama Legislature enacted what is now §6-5-411, Code 1975, for "injuries to decedent's property resulting from wrongful act, etc., causing death." The pertinent part of the statute for this analysis is: "The personal representative of a deceased person may . . . recover such damages as the jury may assess for injuries or damages to the property of the decedent resulting from the same wrongful act, omission or negligence which caused the death of the decedent, provided the decedent could have commenced such action if the wrongful act, *Page 1052 
omission or negligence causing the property damage had not also caused his death." (Emphasis supplied.) Compensatory damages are recoverable under this Code section. See MotorsInsurance Corp. v. Loftin, 277 Ala. 331, 170 So.2d 281
(1964); Standard Accident Insurance Co. v. Whitset,270 Ala. 334, 118 So.2d 922 (1960); Chappell v.Boykin, 41 Ala. App. 137, 143, 127 So.2d 636 (1960), cert. denied, 271 Ala. 697, 127 So.2d 641 (1961).
Certainly, this is strong support for Justice Maddox's statement in his special concurrence in Maples v. ChinesePalace, Inc., supra, that the phrase "such damages as a jury may assess" can be interpreted, and has been interpreted by this Court, to mean either compensatory damages, or punitive damages, or both.
Are the damages referred to in § 6-5-411 compensatory because the statute contains the words "for injury or damages to the property . . . resulting from the same wrongful act, omission or negligence which caused the death," whereas §6-5-410 contains the words "for the wrongful act, omission or negligence . . . whereby the death . . . was caused"? If so, it is a distinction without a difference; death resulting from a wrongful act, omission, or negligence is not different from "for the wrongful act, omission, or negligence . . . whereby the death . . . was caused."
The phrase "wrongful act, omission, or negligence" appears in § 6-5-411, and this Court has held that the damages allowed by that statute are compensatory. Therefore, the phrase "wrongful act, omission, or negligence" in § 6-5-410 does not indicate, suggest, or exemplify that the phrase "such damages," which precedes it, implies only punitive damages.
The phrase "provided the [decedent] could have commenced an action for such wrongful act, omission or negligence if it had not caused death" does not indicate, suggest, or exemplify that the phrase "such damages," which precedes it in § 6-5-410, are only punitive damages. In § 6-5-411, "such damages" is followed by "provided the decedent could have commenced such action if the wrongful act, omission or negligence causing the property damage had not also caused his death." We have held that "such damages" in § 6-5-411 are compensatory.
Lord Campbell's Act, 9 10 Vict. Ch. 93 (1846), and the wrongful death statutes of at least 44 states in addition to Alabama use the phrase "wrongful act."[3] Compensatory damages are recoverable for death by wrongful act in each of those 44 states.[4] *Page 1053 Lord Campbell's Act, supra, and the wrongful death statutes of at least 40 states in addition to Alabama use the word "negligence" or "neglect."[5] Compensatory damages are recoverable for death by negligence or neglect in each of those 40 states.[6] The wrongful death statutes of 7 *Page 1054 
states in addition to Alabama use the word "omission".[7]
(Lord Campbell's Act and the statutes of at least 27 states use the word "default" instead of "omission."[8]) Compensatory damages are recoverable in each of those 7 states in which "omission" is a part of the statute and in those 27 states in which "default" is a part of the statute.[9] *Page 1055 
In holding that only punitive damages could be recovered in a wrongful death action, this Courtrewrote the statute it purported to construe.
Having found nothing in the words of § 6-5-410 to limit the damages recoverable under this statute to "only punitive" damages, and having examined other states' interpretations of similar wrongful death statutes as permitting the recovery of compensatory damages, I now examine the judicial history of the Alabama Wrongful Death Statute in an attempt to find out how this Court became like Johnny's mother, who while watching the parade exclaimed, "Look, everyone is out of step except my Johnny."
To put this in perspective, it is necessary to look first at the law of England. In Baker v. Bolton, 1 Campbell 493, 170 Eng. Reprint 1033 (1803), Lord Ellenborough in dictum in a nisi prius case, tried in a local court before a single judge and not en banc in the superior court at Westminster, wrote: "[I]n a civil court, the death of a human being could not be complained of as an injury." There followed a long and stately train of decisions declaring that the common law denied a right of recovery for the death of a human being killed by the negligence or wrongful act of another. SeeMobile Life Ins. Co. v. Brame, 95 U.S. (5 Otto) 754,24 L.Ed. 580 (1877); Kennedy v. Davis, 171 Ala. 609,55 So. 104 (1911), as examples of these. Some states that had allowed compensation in death cases prior to Baker v.Bolton, supra (see Foster's Case, 1 Court of Assistants 54 (Mass. 1674); Cross v. Guthery, 2 Root 90 (Conn. 1794)), ignored their own precedent and followed the dictum in Baker v. Bolton, supra. (see, Carey v.Berkshire R.R., 55 Mass. (1 Cush.) 475 (1848);Connecticut Mut. Life Ins. Co. v. New York N.H.R.R.,25 Conn. 265 (1856).)
The rule in Baker v. Bolton, supra, was soundly criticized by some courts. (see Plummer v. Webb, 1 Ware 75 (69), F. Case No. 11234 (D.C.Me. 1825), and VanAmburg v. Vicksburg, S. R.R., 37 La.Ann. 650 (1885)).
There was no basis in precedent for the dictum in Bakerv. Bolton, supra. In Anglo-Saxon England, homicide was regarded as a civil offense. Damages for killing a person, in the form of "weregild" (man's-price), were paid by the killer to the deceased's relatives. The amount was not regulated originally nor fixed at any certain rate, but left to the discretion of the deceased's relatives, limited only by their inability to refuse a reasonable amount. 1 Sullivan,Lectures on the English Law 117 (1st American ed. 1805).
The payment was compensatory. *Page 1056 
"If a man killed another, the slayer was to compensatehis death by the payment of a certain sum, greater or less, according to the circumstances of the case." Crabb,English Law 35 (1829) emphasis added).
The amount of the payment evolved into an established scale based upon the social rank of the decedent, and no distinction was made between intentional acts done with deliberate malice, acts committed in the heat of passion, or mere inadvertence,Crabb, supra; 1 Pollack Maitland, The History ofEnglish Law, 46-48 (2d ed. 1923); these facts made that system the exact opposite of the interpretation given by this Court to § 6-5-410, which "grades the quantum of the punishment upon the degree of culpability of the derelict person." Randle v. Birmingham Light PowerCo., 169 Ala. 314, 323, 53 So. 918, 921 (1910).
By the late 13th Century, all homicides in England, even most of those that were accidental, had become criminal offenses. Hay, Death as a Civil Cause of Action inMassachusetts, 7 Harv.L.Rev. 170, 171 (1893).
An involuntary or accidental homicide (homicide perinfortunium) was not a felony, and the killer was not put to death; however, as in a felony, the killer's property was forfeited to the Crown. As long as the killer's property belonged to the Crown, it was useless for the decedent's relatives to attempt to obtain it. Hay, supra, p. 172. Therefore, to say that there was no cause of action for wrongful death at common law is not entirely correct.
Until 1819, when abolished by statute, there existed a quasi-civil remedy for the benefit of the heir or widow of the deceased in a homicide that was felonious. This was the right of "appeal." The heir or widow could release his or her right to have the felon put to death, just as a king could grant a pardon. In some cases this had great pecuniary value. Hay,Death as a Civil Cause of Action in Massachusetts, 7 Harv.L.Rev. 170, 173 (1893).
Having found nothing in precedent to support this favored dictum ("in a civil court, the death of a human being could not be complained of as an injury," Baker v. Bolton), the courts resorted to "reason."
During the 18th Century, homicide per infortunium disappeared.
 "Blackstone also notices this change, and his editor, Edward Christian, Esq., in 1795 appended the following note: 'When homicide does not amount to murder or manslaughter, it is now the universal practice to direct an acquittal.' That was the end of homicide per infortunium.
 "The idea that death was always a criminal matter, however, had more vitality. It had the force of a moral idea. It expressed the sacredness of human life. And it continued to make itself felt."
Hay, Death as a Civil Cause of Action inMassachusetts, p. 173 (emphasis supplied).
This was the mind set that replaced reason as a justification for the common law's not allowing the death of a human being to be complained of as an injury in a civil court. This mind set became a guide to some courts in interpreting statutes that attempted to alleviate the harshness of what Lord Ellenborough said was the common law. Justice Somerville, in King v. Henkie, 80 Ala. 505, 507
(1886), overruled on other grounds, Buchanan v. MergerEnterprises, Inc., 463 So.2d 121 (Ala. 1984), wrote: "The reason for the rule was said by Baron Parke, in a case arising before him under the English statute, to be, that in the eye of the common law 'the value of life was so great as to be incapable of being estimated by money.' " Justice Somerville further noted that "[t]he rule probably, however, rests on a broader basis." Needing no broader basis, the Supreme Court of Michigan in Hyatt v. Adams, 16 Mich. 180, 192 (1867), wrote, "[T]o the cultivated and enlightened mind, looking at human life in the light of Christian religion as sacred,the idea of compensating its loss in money isrevolting." (Emphasis supplied.)
A history of the Alabama wrongful death statutes appears inCentral of Georgia Ry. *Page 1057 v. Ellison, 199 Ala. 571, 579-80, 75 So. 159, 163
(1916):
 "Statutes somewhat similar to this section of the Code were provided for by sections 1938-1941, both inclusive, of the Code of 1852, though the damages then were compensatory and limited, not to exceed three years' income of the deceased, and in no case to exceed $3,000; the damages recovered were for the benefit of the widow, if one, if not, for the children, and if no widow or children, for the next of kin. The act of February 21, 1860 (Acts 1859-60, p. 42), expressly repealed sections 1938 and 1939, and substituted therefor the statute making the damages punitive, such 'as the jury deem just,' and making the damages distributed as personal property of the intestate, and making it exempt from the payment of debts. This last statute, by oversight, it is said, was omitted from the Code of 1867 entirely, and sections 1938 and 1939 were retained and remained the law up to February 5, 1872 (Acts 1871-72, p. 83) when the Legislature re-enacted the homicide statute, which was in all material respects identical with the former act, and was codified in the Code of 1876 as section 2641, and omitting sections 1938 and 1939 of the Code of 1852, which were, respectively, numbered 2297 and 2298 of the Code of 1867, thus repealing said sections. This statute next appeared as section 2589 of the Code of 1886, which combines sections 2641, 2642, and 2643 of the Code of 1876, which sections were, respectively, 2299 and 2300 of the Code of 1867 and sections 1940 and 1941 of the Code of 1852; and section 2589 of the Code of 1886 is substantially brought down in the Code of 1896, and appears as section 27 thereof."
In Black Belt Wood Co. v. Sessions, 514 So.2d 1249,1260 (Ala. 1987), this Court stated:
 "As can easily be seen, the first act provided for only compensatory damages, and placed a 'cap' on the amount of damages that could be awarded.
 "In February 1860, the legislature amended this act. Pamphlet Acts 1859-60, p. 42. The pertinent language as far as damages were concerned became 'such sum as the jury deem just.' There are no legislative reports that indicate the purpose of the change, and, consequently, we do not know what debate, if any, was involved in this change. There is no express mention made whether the damages were compensatory or punitive and, arguably, the statute could be construed to mean that the legislature merely removed the limitation on damages contained in the original act."
Act No. 62, Acts of Alabama 1871-72, p. 83, provided:
"AN ACT
"To prevent homicides.
 "Section 1. Be it enacted by the General Assembly of Alabama, That when the death of a person is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action against the latter at any time within two years thereafter, if the former could have maintained an action against the latter for the same act or omission, had it failed to produce death, and may recover such sum as the jury deem just, and the amount so recovered shall be distributed as personal property of an intestate is now distributed; and shall not be subject to the payment of the debts of the deceased.
 "Sec. 2. Be it further enacted, That the right of action hereby given shall survive against the personal representative of the person unlawfully causing the death aforesaid.
 "Sec. 3. Be it further enacted, That all laws and parts of laws which may contravene the provisions of this act, be, and the same are hereby repealed.
"Approved, February 5, 1872."
Before this was judicially interpreted, it was codified in the Code of Alabama of 1876, which was approved on February 2, 1877. The Code section was as follows:
 "§ 2641. Action for wrongful act causing death: damages distributed.
 "When the death of a person is caused by the wrongful act or omission of another, *Page 1058 
the personal representative of the former may maintain an action against the latter at any time within two years thereafter, if the former could have maintained an action against the latter for the same act or omission, had it failed to produce death, and may recover such sum as the jury deem just, and the amount so recovered shall be distributed as personal property of an intestate is now distributed; and shall not be subject to the payment of the debts of the deceased; and such right of action shall survive against the personal representative of the person unlawfully causing the death aforesaid."
As shown above, the title of Act No. 62, Acts of Alabama 1871-72, was "AN ACT To prevent homicides." Prior to any judicial interpretation of that act, it was reenacted as § 2641, Code of Alabama 1876 (approved Feb. 2, 1877), and "To prevent homicides" was deleted from the title and "action for wrongful act causing death; damages distributed" was substituted therefor.
Even so, the title "To prevent homicides" does not imply that damages must be punitive only. "The term 'homicide' is neutral; while it describes the act [the killing of one human being by the act, procurement, or omission of another], it pronounces no judgment on its moral or legal quality." Black's LawDictionary, 5th ed. (1979). The word "homicide" does not imply that the killing was done by wrongful act or omission, yet the act purported to impose liability only if the death was proximately caused by the defendant's wrongful act or omission.
In Savannah Memphis R.R. v. Shearer, 58 Ala. 672
(1877), the Court first interpreted the act, which had been recodified in the Code of 1876. In that case, the trial court had refused to give the following charge:
 "4 The measure of damages in this case, is what the jury may find was the reasonable pecuniary loss occasioned by the death of deceased, and the law does not allow them to find any damage for wounded feeling or solace of mind of different members of the family, and if there was no pecuniary loss to the family by his death, then none should be found, and the verdict should be for defendant."
Justice Stone wrote as follows, at 680:
 "Charge four fixes an erroneous measure of damages, and was rightly refused on that account, although in other respects it may have asserted correct legal principles. Lacerated feelings of surviving relations, and mere capacity of deceased to make money if permitted to live, do not constitute the measure of recovery under the act of Feb. 5, 1872. Prevention of homicide is the purpose of the statute, and this it proposes to accomplish by such pecuniary mulct as the jury 'deem just.' The damages are punitive, and they are none the less so, in consequence of the direction the statute gives to the damages when recovered. They are assessed against the railroad 'to prevent homicides.' " (Emphasis supplied.)
The Court also held that the following charges were rightly refused:
 "5. This is an action to recover money damage for pecuniary loss, and unless the death of deceased caused pecuniary loss, they can not find for plaintiff.
 "6. In estimating damage, the jury will consider the age, health and occupation of deceased, and the comfort and support afforded to his family, and confine themselves to the actual and such other damage as would afford the family of deceased the same support they would have obtained from his labor during the time he would probably have lived; that in such cases the law looks only to such damage as can be reduced to a pecuniary standard, and they should only find such pecuniary damage as they deem just."
In South North Alabama R.R. v. Sullivan, 59 Ala. 272
(1877), the Court relied on Savannah M.R.R. v.Shearer, supra, decided that same year, in holding that the statute had a "wider aim and scope" than that of providing "a mere solatium to the wounded feelings of surviving relatives, nor the compensation of the [lost] earnings of the slain." This wider aim and scope *Page 1059 
was to punish the person or corporation by which the wrong was done and "give greater security to human life." The mere fact that " '[t]he damages, 'tis true, go to the estate of the party slain, and, in effect, are compensatory . . . does not change the great purpose of the statute — "prevent homicides." ' " 59 Ala. at 278-79.
Neither in Shearer nor in Sullivan did the Court analyze the words of the act itself.
However, the Court has tenaciously maintained the mind set that damages for wrongful death are only punitive, withShearer and Sullivan as the foundation stones.
The act was substantially amended in the Code of 1886 (as can be seen in the following quotation, wherein all language that was changed has been capitalized) to become what is now §6-5-410, which we have analyzed. There was no title "To prevent homicides" given to the substantially changed statute:
 "ACTION FOR WRONGFUL ACT, OMISSION, OR NEGLIGENCE CAUSING DEATH. A PERSONAL REPRESENTATIVE MAY MAINTAIN AN ACTION, AND RECOVER SUCH DAMAGES AS THE JURY MAY ASSESS, FOR THE WRONGFUL ACT, OMISSION, OR NEGLIGENCE OF ANY PERSON OR PERSONS, OR CORPORATION, HIS OR THEIR SERVANTS OR AGENTS, WHEREBY THE DEATH OF HIS TESTATOR OR INTESTATE WAS CAUSED, IF THE TESTATOR OR INTESTATE could have maintained AN ACTION FOR SUCH WRONGFUL ACT, OMISSION, OR NEGLIGENCE, IF IT HAD NOT CAUSED DEATH; SUCH ACTION SHALL NOT ABATE BY THE DEATH OF THE DEFENDANT, BUT MAY BE REVIVED AGAINST HIS PERSONAL REPRESENTATIVE; AND MAY BE MAINTAINED, THOUGH THERE HAS NOT BEEN PROSECUTION, OR CONVICTION, OR ACQUITTAL OF THE DEFENDANT FOR SUCH WRONGFUL ACT, OR OMISSION, OR NEGLIGENCE; AND THE DAMAGES RECOVERED ARE NOT SUBJECT TO THE PAYMENT OF THE DEBTS OR LIABILITIES OF THE TESTATOR OR INTESTATE, BUT MUST BE DISTRIBUTED ACCORDING TO THE STATUTE OF DISTRIBUTIONS. SUCH ACTION MUST BE BROUGHT WITHIN TWO YEARS FROM AND AFTER THE DEATH OF THE TESTATOR OR INTESTATE."
Even though it is evident that the statute was materially changed, the Court in Richmond D.R.R. v. Freeman,97 Ala. 289, 11 So. 800 (1892) held that the change did not affect the measure of damages recoverable under the statute:
 "Such is the construction given by this court to the act 'to prevent homicide,' and as thus construed, it is manifest that the charge set out above is a sound exposition of the elements and measure of damages recoverable under the act unless there has been such modification of the statute in its recent codification as necessitates a different interpretation, or unless the act as thus construed is violative of the organic law, as counsel insist.
 "Has the statute been changed in the respect under consideration since the decision in the Shearer and Sullivan cases? We think not. It has not in the present Code the title which it bore as an original enactment, 'to prevent homicide.' But in the codification of statutes it is usual to omit their titles, and such omission[s] have never been supposed to alter their meaning. Moreover, this title was omitted from the Code of 1876, and the statute without it and considered only as a section of codified laws with an index head line was, as we have seen, given the same interpretation as had been put upon it when its purpose was blazoned in its caption. E.T. Va. Ga. R.R. Co. v. King, [81 Ala. 177, 2 So. 152 (1886)]. And if the title served in this first instance to fix the intent of the law makers it is a fair presumption that this intent follows the statute in all subsequent codifications so long as the words employed by the legislature to effectuate that intent are not materially changed. *Page 1060 
 "The original act and as codified in 1876 provided that the personal representative of one whose death is caused by the wrongful act, etc., of another might 'recover such sum as the jury deem just.' In the present Code the provision is for the recovery of 'such damages as the jury may assess;' and this is the only modification which the act of 1872 has undergone at all. In our opinion the change is purely a verbal one, and in no sense material. The 'sum' referred to in the original act and in the Code of 1876 was nothing more or less than 'damages' as that word is used in the Code of 1886, (§ 2589), and the right to recover such sum as the jury deem just is no more, or less, than the right to recover such damages (sum) as the jury 'may assess.' Indeed, in Sullivan's case, these expressions are used inter-changeably; the 'sum' recoverable is there denominated and treated throughout as 'damages' and the process by which the jury arrives at the amount of such sum is called 'the assessment of damages;' and it was probably at the suggestion afforded by this case that the codifiers of 1886 changed the phraseology of the statute in these respects by inserting the more technical equivalent for the phrase 'such sum as the jury deem just.' All sums recoverable for a wrongful act whether as punishment or compensation are 'damages' in a legal sense, and whatever sum the jury 'deem just' is returned as their verdict, and the sum so returned constitutes the damages assessed by them.
 "The objection taken on constitutional grounds to the statute as it has been construed by this court seemed to us to be without merit. It is as clearly within legislative competency, of course, to punish negligence as it is to punish wantonness, willfulness or intentional wrong doing. It is not controverted at all that the common-law doctrine by which the imposition of punishment through a recovery at the suit of an individual of exemplary damages for wanton, willful or intentional misconduct is allowed, is well within organic limitations; and we conceive no basis for the distinction between the power to punish in this way for negligence and such power in respect of wantonness and the like when brought to the touch of constitutional guarantee intended to secure to the citizen certain rights as to the proceedings necessary to his arrest, arraignment, conviction and punishment for a violation of criminal law.
 "The act of 1872 having been, without modification in any material sense, twice reenacted since the judicial construction we have been considering was put upon it — in the Code 1876 and again in the Code 1886 — and being with that construction a constitutional exercise of the legislative power, it is now to be considered as if the terms and provisions, which have been evolved out of it and declared in concrete form by judicial interpretation, were expressly embodied in its letter. This, we think, should close the door to the overruling of the cases which put that construction on it, and to the adoption of a different one. This is the consideration which mainly moves the writer to a reaffirmation of the doctrine — declared in the cases of Shearer, Sullivan and King, supra; the question, in his opinion, is no longer an open one. If it were, he should be much inclined to the view so ably urged by counsel, that the statute was primarily intended to afford compensation to the next of kin of a person coming to his death through the wrong of another, and to allow the imposition of punitive damages only in those cases where they would have been recoverable had the injury fallen short of death. He is disposed to think that a too far reaching influence was accorded to the title of the act; and if this case were here upon first impression, he would be strongly inclined to rule that the legislative intent was to prevent homicides by giving an action for fatal injuries as to which no right of action existed before where the next of kin of the slain were in fact losers by his death, the recovery to be tolled by their loss unless the circumstances of the wrongful act *Page 1061 warranted the imposition of additional damages as a punishment under well established common-law principles. It is manifest that this construction would conserve the expressed legislative purpose, 'to prevent homicides,' since it attached a new and previously non-existing liability to all wrongful acts producing death, would be more in harmony with general legal theories and precedents, and give [what] the writer conceives to be, a more reasonable field for the operation of the limitation of the right of action to cases in which the deceased might have recovered had the injury not been fatal. It would seem too, that this view should find some support in the provision giving direction to the sum recovered; and certainly it is strongly supported by that clause of the statute which provides that 'the action shall not abate by the death of the defendant but may be revived against his personal representatives,' since in such case, there could be no punishment of the wrong doer but only of wholly innocent successors to his estate, and the whole policy of our laws, as of every civilized system of jurisprudence, is utterly at war with the idea of vicarious punishment, while the policy of enforcing compensation for wrongs done out of the estate of a deceased wrong doer is not opposed to any abstract notion of justice or to the practices of any theory of government. But be all that as it may, the legislature had the power to enact a law such as this one is with the construction this court has given it. They have in effect done so here by the re-enactment of this statute after its construction; and it now only remains for the courts to enforce it as thus constructed and re-enacted."
97 Ala. at 294-97, 11 So. at 801-03 (emphasis supplied).
Among the substantial changes not recognized by Justice McClellan was the addition of "negligence" to the wrongful acts or omissions for which damages were recoverable. The personal representative is limited to such actions as the testator/intestate could have maintained if death had not resulted. The testator/intestate could not have maintained an action to recover punitive damages for negligence if the negligence had not caused his death. East Tennessee, Va. Ga. R.R. v. King, 81 Ala. 177, 183, 2 So. 152 (1886).
For some reason or reasons, the Court chose not to discuss this change but to opine that it was within the legislative competency to punish negligence as it could punish wantonness, willfulness, or intentional wrongdoing. It was not legislative competency, but legislative intent that was at issue; and this change was strong evidence that the Legislature intended to change the judicial mind set of the 19th Century that held that "the value of human life was so great as to be incapable of being estimated by money," King v. Henkie, supra, and that "to the cultivated and enlightened mind, looking at human life in the light of Christian religion as sacred, the idea of compensating its loss in money is revolting." Hyatt v.Adams, supra.
Construing the statute free of prior judicial interpretation, the Court in Richmond D.R.R. v. Freeman, supra,97 Ala. at 296, 11 So. at 802, was inclined to view the statute as primarily intending "to afford compensation to the next of kin of a person coming to his death through the wrong of another, and to allow the imposition of punitive damages only in those cases where they would have been recoverable had the injury fallen short of death." Thus, I am inclined to interpret the words of the statute in that same way.
The Legislature has not amended the statute sinceRichmond D.R.R. v. Freeman, supra, to reject the Court's interpretation that the damages recoverable under what is now § 6-5-410 are only punitive. Should we then assume that the Court's interpretation was correct? If we do so, the assumption is based on the false premise that the correctness of statutory construction is measured by what the current Legislature desires, rather than by what the law as enacted meant.
In Jackson v. City of Florence, 294 Ala. 592, 598,320 So.2d 68, 73 (1975), Justice *Page 1062 
Shores, writing for a majority of the Court, wrote:
 "The city here argues that the failure of the legislature to act in this area constitutes its approval of the construction placed on its enactments by this court. It is equally arguable, as noted by Justice Currie, concurring specially in Holytz v. City of Milwaukee, 17 Wis.2d 26, 115 N.W.2d 618, 626 (1962), that '. . . they [the legislature] deferred to the supposed wisdom of the court, or else determined that the court should correct its own mistakes,' or as Judge Moremen of the Court of Appeals of Kentucky responded to the same argument in Haney v. City of Lexington, (Ky.), 386 S.W.2d 738, 741
(1964):
 " '. . . It seems to us that an equally reasonable assumption is that the legislature might expect the courts themselves to correct an unjust rule which was judicially created. . . .'
 "The Supreme Court of New Jersey met the same argument in McAndrew v. Mularchuk, 33 N.J. 172, 193, 162 A.2d 820, 832 (1960), and said:
 " '. . . But the limitation on the normal operation of respondent superior was originally placed there by the Judiciary. Surely it cannot be urged successfully that an outmoded, inequitable, and artificial curtailment of a general rule of action created by the judicial branch of the government cannot or should not be removed by its creator. . . .'
 "And again, by the Supreme Court of Washington, in Pierce v. Yakima Valley Memorial Hospital Ass'n., 43 Wn.2d 162, 178, 260 P.2d 765, 774 (1953):
 " '. . . We closed our courtroom doors without legislative help, and we can likewise open them. . . .'
 "We earnestly believe that the responsibility for correcting what is universally condemned as a bad rule of law rests with this court."
Justice Scalia, in his dissent in Johnson v.Transportation Agency, ___ U.S. ___, ___, 107 S.Ct. 1442,1473, 94 L.Ed.2d 615 (1987), wrote:
 "[O]ne must ignore rudimentary principles of political science to draw any conclusions regarding that intent from the failure to enact legislation. The 'complicated check on legislation,' The Federalist No. 62, p. 378 (C. Rossiter ed. 1961), erected by our Constitution creates an inertia that makes it impossible to assert with any degree of assurance that congressional failure to act represents (1) approval of the status quo, as opposed to (2) inability to agree upon how to alter the status quo, (3) unawareness of the status quo, (4) indifference to the status quo, or even (5) political cowardice."
There is substantially that same complicated check on legislation in the Legislature of Alabama as in the Congress of the United States.[10]
Mindful of the spectre of unconstitutionality that overshadows § 6-5-410 (Richmond D.R.R. v.Freeman, supra, Aetna Life Insurance Co. v.Lavoie, supra) as it has been interpreted by the Court, and mindful that the words of the statute and not the judicial mind set of a previous time should be paramount in our interpretation of statutes, and to make certain that truth and not repose is my choice when there is a choice between the two, I interpret § 6-5-410 as primarily intending to afford *Page 1063 
compensation to the next of kin of a person coming to his or her death through the wrongful act, omission, or negligence of another and to allow punitive damages only in those cases where they would have been recoverable had the injury fallen short of death.
I would apply the principle of joint and several liability to compensatory damages in wrongful death cases, and would have no apportionment of compensatory damages among joint tortfeasors. In this way, the uncompensated victim has maximum assurance of receiving full compensation for all compensabledamages sustained as a result of the wrongful acts, omissions, or negligence of all of the tort-feasors. If punitive damages are recoverable in wrongful death cases, I would have them apportioned among the joint tort-feasors in accordance with each defendant's degree of culpability.
Justice Shores, in Jackson v. City of Florence, supra, 294 Ala. at 598, 320 So.2d at 73, wrote:
 "As strongly as we believe in the stability of the law, we also recognize that there is merit, if not honor, in admitting prior mistakes and correcting them."
Each Justice must decide what is a mistake that there is honor in admitting and correcting and of what we must say, " 'Twill be recorded for a precedent' "[11] forever. I see as much honor in admitting and correcting this mistake, which, in my opinion, has caused unjust results in such cases as Carterv. City of Birmingham, supra, as in admitting and correcting those mistakes in Jackson v. City of Florence,supra; Jawad v. Granade, 497 So.2d 471 (Ala. 1986); andLorence v. Hospital Board of Morgan County, 294 Ala. 614, 320 So.2d 631 (1975), which includes Sam Walter Foss's story of the precedential "primeval calf."
Maurice Evan Hare, in 1905, wrote:
"There once was a man who said 'Damn!
It is borne in upon me I am
An engine that moves
In predestinate grooves,
I'm not even a bus, I'm a tram.' "
Since I do not wish to move in erroneous "predestinate grooves," I would hold that both compensatory and punitive damages can be recoverable in an Alabama wrongful death suit, that compensatory damages are not apportionable among joint tort-feasors, and that punitive damages are apportionable among joint tort-feasors.
Since wrongful death damages have been interpreted as beingonly punitive by prior decisions of this Court, it is evident that the parties to the releases intended for the $400,000 from Mrs. Tatum's physician and the $50,000 from the drug manufacturer to be punitive damages. Therefore, this should have no effect on any compensatory damages or punitive damages that a jury may award against Schering in the trialof this case. Neither party should be able to introduce such pro tanto releases. Therefore, the answer to certified question one should be "none". The answers to certified questions two and three should be "no."
It is noted, but not in answer to these certified questions, that the trial court has the discretion to inform the jury of the total amount of any compensatory settlement and to instruct the jury to subtract that figure from the full amount of compensatory damages sustained by a plaintiff. Bucyrus-ErieCo. v. Von Haden, 416 So.2d 699, 702 (Ala. 1982). Even though Bucyrus-Erie also permits a tort-feasor who is not a party to the release to plead a pro tanto release as a bar to the amount paid by the released tort-feasor or to place the release in evidence to show payment for the injury up to the amount shown in the release, this should not be permitted if the trial court determines that a portion of the amount paid pursuant to the release was for punitive damages, since I would apportion punitive damages, and, by apportionment, a tort-feasor should receive no benefit for any punitive damages paid by other tort-feasors.
[1] A. Pope, An Essay on Criticism (1711) line 335: "Be not the first by whom the new are tried nor yet the last to lay the old aside."
[2] W. Shakespeare, Julius Caesar, act I, scene iii, line 33:
 "Indeed it is a strange-disposed time. But men may construe things after their fashion, Clean from the purpose of the things themselves."
[3] See Alaska Stat. § 09.55.580 (1983); Ariz.Rev. Stat.Ann. § 12-611 (1982); Ark.Stat.Ann. § 27-906 (1979); Cal.C.P. Code § 377 (West 1973); Colo.Rev.Stat. § 13-21-202 (1973); Fla. Stat.Ann. § 768.19 (West 1986); Ga. Code Ann. § 51-4-5 (1982); Hawaii Rev.Stat. § 663-3 (1985); Idaho Code § 5-311 (1979 Supp. 1987); Ill.Rev.Stat. Ch. 70, § 1 (1985); Ind. Code Ann. §34-1-1-2 (Burns 1986); Iowa Code § 633.336 (1987); Kan.Stat.Ann. § 60-1901 (1983); Ky.Rev.Stat.Ann. §411.130 (Bobbs-Merrill 1972); Me.Rev.Stat.Ann.tit. 18-A, § 2-804 (1964); Md.C.J. Code Ann. § 3-902 (1984); Mich.Comp. Laws Ann. § 600.2922 (1986); Minn.Stat. §573.02 (1986); Miss. Code Ann. § 11-7-13 (1972); Mo.Rev.Stat. § 537.080 (1986); Mont. Code Ann. § 27-1-513 (1986); Neb.Rev.Stat. § 30-809 (1985); Nev.Rev.Stat. § 41.085 (1986); N.J.Stat.Ann. § 2A: 31-1 (West 1952); N.M.Stat.Ann. § 41-2-3 (1986); N.Y.E.P.T. Law § 5-4.1 (McKinney 1981); N.C.Gen.Stat. § 28A-18-2 (1984); N.D.Cent. Code § 32-21-01 (1976); Ohio Rev. Code Ann. § 2125.01 (Page 1976); Okla.Stat.Ann.tit. 12, § 1053 (West 1981); Or.Rev.Stat. § 30.020 (1983); 42 Pa.Cons.Stat. Ann. § 8301 (Purdon 1982); R.I.Gen. Laws § 10-7-1
(1985); S.C. Code Ann. § 15-51-10 (Law.Co-op. 1977); S.D. Codified Laws Ann. § 21-5-1 (1987); Tenn. Code Ann. § 20-5-106 (1980); Tex.Civ.Prac. Rem. Code Ann. § 71.002 (Vernon 1986); Utah Code Ann. § 78-11-7 (1987); Vt.Stat.Ann.tit. 14, § 1491 (1974 1987 Supp.); Va. Code § 8.01-50 (1984); Wash.Rev. Code § 4.20.010 (1985); W.Va. Code § 55-7-5 (1981); Wis.Stat. § 895.03
(1985-1986); Wyo.Stat. § 1-38-101 (1977).
[4] Linge's Adm'r v. Alaska Treadwell Co., 3 Alaska 9
(1906); Nunez v. Nunez, 25 Ariz. App. 558,545 P.2d 69 (1976); see Beaty v. Buckeye Fabric Finishing Co.,179 F. Supp. 688 (E.D.Ark. 1959); In Re Riccomi'sEstate, 185 Cal. 458, 197 P. 97 (1921); see Carr v.Pacific Tel. Co., 26 Cal.App.3d 537, 103 Cal.Rptr. 120
(1972); Denver R.G.R.R. v. Spencer, 27 Colo. 313,61 P. 606 (1900), Kogul v. Sonheim, 150 Colo. 316,372 P.2d 731 (1962); see also Barnhill v. Public ServiceCo., 649 P.2d 716 (Colo.Ct.App. 1982), aff'd,690 P.2d 1248 (Colo. 1984); see Wadsworth v. Friend,201 So.2d 641 (Fla.Dist.Ct.App. 1967); Harden v. United States485 F. Supp. 380 (S.D Ga. 1980), aff'd in part, vacated in part,688 F.2d 1025 (5th Cir. 1982); see Hudson v.Uwekoolani, 653 P.2d 783, 65 Haw. 468 (1982); seeAnderson v. Great Northern R.R., 15 Idaho 513, 99 P. 91
(1909); see Klawonn v. Mitchell, 105 Ill.2d 450, 86 Ill.Dec. 478, 475 N.E.2d 857 (1985), Trotter v. Moore,113 Ill. App.3d 1011, 69 Ill.Dec. 653, 447 N.E.2d 1340 (1983), rev'd on other grounds, 101 Ill.2d 551, 82 Ill.Sec. 456, 468 N.E.2d 1236 (1984); Consolidated Stone Co. v. Staggs,164 Ind. 331, 73 N.E. 695 (1905); see Briner v.Hyslop, 337 N.W.2d 858 (Iowa 1983); see McCart v.Muir, 230 Kan. 618, 641 P.2d 384 (1982); Louisville N.R.R. v. Kelly's Adm'x, 100 Ky. 421, 38 S.W. 852 (1897);Carrier v. Bornstein, 136 Me. 1, 1 A.2d 219 (1938), see Blanchette v. Miles, 139 Me. 70, 27 A.2d 396
(1942); see Weimer v. Hetrick, 309 Md. 536,525 A.2d 643 (1987); see Keane v. Carolina Freight CarriersCorp., 70 Md. App. 298, 520 A.2d 1142 (1987), aff'd,311 Md. 335, 534 A.2d 1337 (1988); Crystal v. Hubbard,92 Mich. App. 240, 285 N.W.2d 66 (1979), rev'd on other grounds,414 Mich. 297, 324 N.E.2d 869 (1982); see Larson v.Johns-Manville Sales Corp., 427 Mich. 301, 399 N.W.2d 1
(1986); Thoirs v. Pounsford, 210 Minn. 462,299 N.W. 16 (1941); Gulf Transport Co. v. Allen, 209 Miss. 206,46 So.2d 436 (1950); Caen v. Feld, 371 S.W.2d 209 (Mo. 1963); see Torchia v. Burlington Northern, Inc.,174 Mont. 83, 568 P.2d 558 (1977), cert. denied, 434 U.S. 1035,98 S.Ct. 770, 54 L.Ed.2d 783 (1978); Anderson v. Chicago B. Q.R.R., 35 Neb. 95, 52 N.W. 840 (1892); McGarry v.United States, 370 F. Supp. 525 (D.Nev. 1973), aff'd,549 F.2d 587 (9th Cir. 1976); Odlivak v. Elliott,82 F. Supp. 607 (D.Del. 1949); see also Cooper v. ShoreElectric Co., 63 N.J.L. 558, 44 A. 633 (1899); Stangv. Hertz Corp, 81 N.M. 69, 463 P.2d 45 (1969), aff'd,81 N.M. 348, 467 P.2d 14 (1970), rev'd on other grounds, 83 N.M. 730, 497 P.2d 732 (1972); Woodward v. Pancio,65 A.D.2d 923, 410 N.Y.S.2d 454 (1978); Beck v. Carolina Power Light Co., 57 N.C. App. 373, 291 S.E.2d 897, aff'd,307 N.C. 267, 297 S.E.2d 397 (1982); Hyyti v. Smith,67 N.D. 425, 272 N.W. 747 (1937); see Rubeck v. Huffman,54 Ohio St.2d 20, 374 N.E.2d 411 (1978); E.G. NicholasConst. Co. v. State Indus. Commission, 207 Okla. 428,250 P.2d 221 (1952); see Arrow Transportation Co. v. NorthwestGrocery Co., 258 Or. 363, 482 P.2d 519 (1971); Manningv. Capelli, 270 Pa. Super. 207, 411 A.2d 252 (1979); seeMcCabe v. Narragansett Elec. Lighting Co.,26 R.I. 427, 59 A. 112 (1904); see Mishoe v. Atlantic Coast LineR.R., 186 S.C. 402, 197 S.E. 97 (1938); see Brickmanv. Southern Ry., 74 S.C. 306, 54 S.E. 553 (1906); seeHodkinson v. Parker, 70 S.D. 272, 16 N.W.2d 924
(1944); see Memphis St. Ry. v. Cooper, 203 Tenn. 425,313 S.W.2d 444 (1958); see Tarrant County Hosp. Dist. v.Jones, 664 S.W.2d 191 (Tex.Ct.App. 1984); see alsoStanford v. McLean Trucking Co., 506 F. Supp. 1252
(E.D.Tex. 1981); Morrison v. Perry, 104 Utah 151,140 P.2d 772 (1943); see Bassett v. Vermont Tax Dept.,135 Vt. 257, 376 A.2d 731 (1977); see also Allen v. Moore,109 Vt. 405, 199 A. 257 (1938); Cassady v. Martin,220 Va. 1093, 266 S.E.2d 104 (1980); Kramer v. Portland SeattleAuto Freight, 43 Wn.2d 386, 261 P.2d 692 (1953);Morris v. Baltimore O.R.R., 107 W. Va. 97,147 S.E. 547 (1929); see Yeater v. Jennings Oil Co., 75 W. Va. 346, 84 S.E. 904 (1914); Harris v. Kelley,70 Wis.2d 242, 234 N.W.2d 628 (1975); see Ashley v. Read Const.Co., 195 F. Supp. 727 (D.Wyo. 1961); see also ColiseumMotor Co. v. Hester, 43 Wyo. 298, 3 P.2d 105 (1931).
[5] Alaska Stat. § 09.55.580 (1983); Ariz.Rev.Stat.Ann. § 12-611 (1982); Ark.Stat.Ann. § 27-906 (1979); Cal.C.P. Code § 377 (West 1973); Colo.Rev.Stat. § 13-21-202 (1973); see Carr v. Pacific Tel. Co.,26 Cal.App.3d 537, 103 Cal.Rptr. 120 (1972); Fla.Stat.Ann. §768.19 (West 1986); Ga. Code Ann. § 51-4-5 (1982); Hawaii Rev.Stat. § 663-3 (1985); Idaho Code § 5-311 (1979 
Supp. 1987); Ill.Rev.Stat. Ch. 70, § 1 (1985); Ky.Rev.Stat.Ann. § 411.130 (Bobbs-Merrill 1972); Me.Rev.Stat.Ann.tit. 18-A § 2-804 (1964); Md.C.J. Code Ann. § 3-902 (1984); Mass.Ann. Laws ch. 229, § 2 (Law.Co-op. 1986); Mich.Comp. Laws Ann. § 600.2922 (1986); Miss. Code Ann. § 11-7-13 (1972); Mo.Rev.Stat. § 537.080 (1986); Mont. Code Ann. § 27-1-513 (1986); Neb.Rev.Stat. §30-809 (1985); Nev.Rev.Stat. § 41.085 (1986); N.J.Stat.Ann. § 2A:31-1 (West 1952); N.M.Stat.Ann. § 41-2-3 (1986); N YE.P.T. Law § 5-4.1 (McKinney 1981); N.C.Gen.Stat. § 28A-18-2 (1984); N.D. Cent. Code § 32-21-01 (1976); Ohio Rev. Code Ann. § 2125.01 (Page 1976); 42 Pa.Cons.Stat.Ann. § 8301 (Purdon 1982); R.I.Gen. Laws § 10-7-1 (1985); S.C. Code Ann. § 15-51-10 (Law.Co-op. 1977); S.D. Codified Laws Ann. § 21-5-1 (1987); Tex.Civ.Prac. Rem. Code Ann. § 71.002 (Vernon 1986); Utah Code Ann. § 78-11-7 (1987); Vt.Stat.Ann.tit. 14, § 1491 (1974 1987 Supp.); Va. Code § 8.01-50 (1984); Wash.Rev. Code § 4.20.010
(1985); W.Va. Code § 55-7-5 (1981); Wis.Stat. § 895.03
(1985-1986); Wyo.Stat. § 1-38-101 (1977).
[6] Linge's Adm'r v. Alaska Treadwell Co., 3 Alaska 9
(1906); Nunez v. Nunez. 25 Ariz. App. 558,545 P.2d 69 (1976); see Beaty v. Buckeye Fabric Finishing Co.,179 F. Supp. 688 (E.D.Ark. 1959); In Re Riccomi'sEstate, 185 Cal. 458, 197 P. 97 (1921); see Carr v.Pacific Tel. Co., 26 Cal.App.3d 537, 103 Cal.Rptr. 120
(1972); Denver R.G.R.R. v. Spencer, 27 Colo. 313,61 P. 606 (1900), Kogul v. Sonheim, 150 Colo. 316,372 P.2d 731 (1962); see also Barnhill v. Public ServiceCo., 649 P.2d 716 (Colo.Ct.App. 1982), aff'd,690 P.2d 1248 (Colo. 1984); Lynch v. Lynch, 39 Del. 1,195 A. 799 (Super.Ct. 1937), Benson v. Lynch, 404 F. Supp. 8
(D.Del. 1975); see Wadsworth v. Friend, 201 So.2d 641
(Fla.Dist.Ct.App. 1967); Harden v. United States,485 F. Supp. 380 (S.D.Ga. 1980), aff'd in part, vacated in part,688 F.2d 1025 (5th Cir. 1982); see Hudson v. Uwekoolani,653 P.2d 783, 65 Haw. 468 (1982); see Anderson v. GreatNorthern R.R., 15 Idaho 513, 99 P. 91 (1909); seeKlawonn v. Mitchell, 105 Ill.2d 450, 86 Ill.Dec. 478,475 N.E.2d 857 (1985), Trotter v. Moore, 113 Ill. App.3d 1011, 69 Ill.Dec. 653, 447 N.E.2d 1340 (1983), rev'd on other grounds, 101 Ill.2d 551, 82 Ill.Dec. 456, 468 N.E.2d 1236 (1984); Louisville N.R.R. v. Kelly's Adm'x, 100 Ky. 421,38 S.W. 852 (1897); Carrier v. Bornstein, 136 Me. 1, 1 A.2d 219 (1938), see Blanchette v. Miles, 139 Me. 70, 27 A.2d 396 (1942); see Weimer v. Hetrick,309 Md. 536, 525 A.2d 643 (1987); see Keane v. Carolina FreightCarriers Corp., 70 Md. App. 298, 520 A.2d 1142 (1987), aff'd, 311 Md. 335, 534 A.2d 1337 (1988); Putnam v.Savage, 244 Mass. 83, 138 N.E. 808 (1923); Bullard v.Central V.R.R., 565 F.2d 193 (1st Cir. 1977); Crystalv. Hubbard, 92 Mich. App. 240, 285 N.W.2d 66 (1979), rev'd on other grounds, 414 Mich. 297, 324 N.E.2d 869 (1982); seeLarson v. Johns-Manville Sales Corp., 427 Mich. 301,399 N.W.2d 1 (1986); Gulf Transport Co. v. Allen,209 Miss. 206, 46 So.2d 436 (1950); Caen v. Feld,371 S.W.2d 209 (Mo. 1963); see Torchia v. Burlington Northern,Inc., 174 Mont. 83, 568 P.2d 558 (1977), cert. denied,434 U.S. 1035, 98 S.Ct. 770, 54 L.Ed.2d 783 (1978); Anderson v.Chicago B. Q.R.R., 35 Neb. 95, 52 N.W. 840 (1892);McGarry v. United States, 370 F. Supp. 525 (D.Nev. 1973), aff'd, 549 F.2d 587 (9th Cir. 1976); Odlivak v.Elliott, 82 F. Supp. 607 (D.Del. 1949); see also Cooperv. Shore Electric Co., 63 N.J.L. 558, 44 A. 633 (1899);Stang v. Hertz Corp, 81 N.M. 69, 463 P.2d 45 (1969), aff'd, 81 N.M. 348, 467 P.2d 14 (1970), rev'd on other grounds,83 N.M. 730, 497 P.2d 732 (1972); Woodward v. Pancio,65 A.D.2d 923, 410 N.Y.S.2d 454 (1978); Beck v. CarolinaPower Light Co., 57 N.C. App. 373, 291 S.E.2d 897, aff'd,307 N.C. 267, 297 S.E.2d 397 (1982); Hyyti v. Smith,67 N.D. 425, 272 N.W. 747 (1937); see Rubeck v.Huffman, 54 Ohio St.2d 20, 374 N.E.2d 411 (1978);Manning v. Capelli, 270 Pa. Super. 207, 411 A.2d 252
(1979); see McCabe v. Narragansett Elec. Lighting Co.,26 R.I. 427, 59 A. 112 (1904); see Mishoe v. Atlantic CoastLine R.R., 186 S.C. 402, 197 S.E. 97 (1938); seeBrickman v. Southern Ry., 74 S.C. 306, 54 S.E. 553
(1906); see Hodkinson v. Parker, 70 S.D. 272,16 N.W.2d 924 (1944); see Tarrant County Hosp. Dist. v.Jones, 664 S.W.2d 191 (Tex.Ct.App. 1984); see alsoStanford v. McLean Trucking Co., 506 F. Supp. 1252
(E.D.Tex. 1981); Morrison v. Perry, 104 Utah 151,140 P.2d 772 (1943); see Bassett v. Vermont Tax Dept.,135 Vt. 257, 376 A.2d 731 (1977); see also Allen v. Moore,109 Vt. 405, 199 A. 257 (1938); Cassady v. Martin,220 Va. 1093, 266 S.E.2d 104 (1980); Kramer v. Portland SeattleAuto Freight, 43 Wn.2d 386, 261 P.2d 692 (1953);Morris v. Baltimore O.R.R., 107 W. Va. 97,147 S.E. 547 (1929); see Yeater v. Jennings Oil Co., 75 W. Va. 346, 84 S.E. 904 (1914); Harris v. Kelley,70 Wis.2d 242, 234 N.W.2d 628 (1975); see Ashley v. Read Const.Co., 195 F. Supp. 727 (D.Wyo. 1961); see also ColiseumMotor Co. v. Hester, 43 Wyo. 298, 3 P.2d 105 (1931).
[7] Alaska Stat. § 09.55.580 (1983); Ind. Code Ann. §34-1-1-2 (Burns 1986); Kan.Stat.Ann. § 60-1901 (1983); Minn.Stat. § 573.02 (1986); Miss. Code Ann. § 11-7-13 (1972); Okla.Stat.Ann.tit. 12, § 1053 (West 1981); Or.Rev.Stat. § 30.020 (1983); Tenn. Code Ann. § 20-5-106 (1980).
[8] Ariz.Rev.Stat.Ann. §§ 12-611 (1982); Ark.Stat.Ann. § 27-906 (1979); Colo.Rev.Stat. § 13-21-202 (1973); Fla.Stat.Ann. § 768.19 (West 1986); Hawaii Rev.Stat. § 663-3 (1985); Ill.Rev.Stat. Ch. 70, § 1 (1985); Me.Rev.Stat.Ann.tit. 18-A § 2-804 (1964); Md.C.J. Code Ann. § 3-902 (1984); Mo.Rev.Stat. § 537.080 (1986); Neb.Rev.Stat. § 30-809 (1985); N.J.Stat.Ann. § 2A: 31-1 (West 1952); N.M.Stat.Ann. § 41-2-3 (1986); N.Y.E.P.T. Law § 5-4.1 (McKinney 1981); N.C.Gen.Stat. § 28A-18-2 (1984); N.D.Cent. Code § 32-21-01 (1976); Ohio Rev. Code Ann. § 2125.01 (Page 1976); R.I.Gen. Laws § 10-7-1 (1985); S.C. Code Ann. § 15-51-10 (Law.Co-op. 1977); S.D. Codified Laws Ann. § 21-5-1 (1987); Tex.Civ.Prac. Rem. Code Ann. § 71.002 (Vernon 1986); Vt. Stat.Ann.tit. 14, § 1491 (1974 1987 Supp.); Va. Code § 8.01-50 (1984); Wash.Rev. Code § 4.20.010 (1985); W.Va. Code § 55-7-5 (1981); Wis.Stat. § 895.03 (1985-1986); Wyo.Stat. § 1-38-101 (1977).
[9] Linge's Adm'r v. Alaska Treadwell Co., 3 Alaska 9
(1906); Nunez v. Nunez, 25 Ariz. App. 558,545 P.2d 69 (1976); see Beaty v. Buckeye Fabric Finishing Co.,179 F. Supp. 688 (E.D.Ark. 1959); Denver R.G.R.R. v.Spencer, 27 Colo. 313, 61 P. 606 (1900), Kogul v.Sonheim, 150 Colo. 316, 372 P.2d 731 (1962); see alsoBarnhill v. Public Service Co., 649 P.2d 716
(Colo.Ct.App. 1982), aff'd, 690 P.2d 1248 (Colo. 1984); Lynch v.Lynch, 39 Del. 1, 195 A. 799 (Super.Ct. 1937), Bensonv. Lynch, 404 F. Supp. 8 (D.Del. 1975); see Wadsworthv. Friend, 201 So.2d 641 (Fla.Dist.Ct.App. 1967); seeHudson v. Uwekoolani, 653 P.2d 783, 65 Haw. 468
(1982); see Klawonn v. Mitchell, 105 Ill.2d 450, 86 Ill.Dec. 478, 475 N.E.2d 857 (1985), Trotter v. Moore,113 Ill. App.3d 1011, 69 Ill.Dec. 653, 447 N.E.2d 1340, (1983), rev'd on other grounds, 101 Ill.2d 551, 82 Ill.Dec. 456, 468 N.E.2d 1236 (1984); Consolidated Stone Co. v. Staggs,164 Ind. 331, 73 N.E. 695 (1905); see McCart v. Muir,230 Kan. 618, 641 P.2d 384 (1982); Carrier v.Bornstein, 136 Me. 1, 1 A.2d 219 (1938), seeBlanchette v. Miles, 139 Me. 70, 27 A.2d 396 (1942); see Weimer v. Hetrick, 309 Md. 536, 525 A.2d 643
(1987); see Keane v. Carolina Freight Carriers Corp.,70 Md. App. 298, 520 A.2d 1142 (1987), aff'd, 311 Md. 335,534 A.2d 1337 (1988); Thoirs v. Pounsford, 210 Minn. 462,299 N.W. 16 (1941); Caen v. Feld, 371 S.W.2d 209 (Mo. 1963); Anderson v. Chicago B. Q.R.R., 35 Neb. 95,52 N.W. 840 (1892); Odlivak v. Elliott, 82 F. Supp. 607
(D.Del. 1949); see also Cooper v. Shore Electric Co.,63 N.J.L. 558, 44 A. 633 (1899); Stang v. Hertz Corp.,81 N.M. 69, 463 P.2d 45 (1969), aff'd, 81 N.M. 348, 467 P.2d 14
(1970), rev'd on other grounds, 83 N.M. 730, 497 P.2d 732
(1972); Woodward v. Pancio, 65 A.D.2d 923, 410 N.Y.S.2d 454
(1978); Beck v. Carolina Power Light Co.,57 N.C. App. 373, 291 S.E.2d 897, aff'd, 307 N.C. 267,297 S.E.2d 397 (1982); Hyyti v. Smith, 67 N.D. 425, 272 N.W. 747
(1937); see Rubeck v. Huffman, 54 Ohio St.2d 20,374 N.E.2d 411 (1978); see McCabe v. Narragansett Elec.Lighting Co., 26 R.I. 427, 59 A. 112 (1904); seeMishoe v. Atlantic Coast Line R.R., 186 S.C. 402,197 S.E. 97 (1938); see Brickman v. Southern Ry.,74 S.C. 306, 54 S.E. 553 (1906); see Hodkinson v. Parker,70 S.D. 272, 16 N.W.2d 924 (1944); see Tarrant County Hosp.Dist. v. Jones, 664 S.W.2d 191 (Tex.Ct.App. 1984); see also Stanford v. McLean Trucking Co., 506 F. Supp. 1252
(E.D.Tex. 1981); see Bassett v. Vermont Tax Dept.,135 Vt. 257, 376 A.2d 731 (1977); see also Allen v. Moore,109 Vt. 405, 199 A. 257 (1938); Cassady v. Martin,220 Va. 1093, 266 S.E.2d 104 (1980); Kramer v. Portland SeattleAuto Freight, 43 Wn.2d 386, 261 P.2d 692 (1953);Morris v. Baltimore O.R.R., 107 W. Va. 97,147 S.E. 547 (1929); see Yeater v. Jennings Oil Co., 75 W. Va. 346, 84 S.E. 904 (1914); Harris v. Kelley,70 Wis.2d 242, 234 N.W.2d 628 (1975); see Ashley v. Read Const.Co., 195 F. Supp. 727 (D.Wyo. 1961); see also ColiseumMotor Co. v. Hester, 43 Wyo. 298, 3 P.2d 105 (1931).
[10] This Court is aware that several "Tort Reform" bills were enacted by the Legislature and signed by the Governor in 1987. None purported to readopt § 6-5-410, Code 1975. The references to § 6-5-410 or to death actions in these Acts (Act No. 87-183; Act No. 87-185, § 1(a), § 10, and the severability provision in § 11; Act 87-187 (§ 1; and Act 87-189, § 7, Acts of Alabama 1987), send mixed signals. Section 1 of Act 87-187 contains the words "[i]n all civil actions where damages for any medical or hospitalexpenses are claimed and are legally recoverable for personal injury or death" (emphasis supplied). This could be interpreted as expressing the legislative intention that compensatory damages, when claimed, should be allowed in wrongful death actions. Section 1(a) and § 10, Act No. 87-185, except civil actions for wrongful death pursuant to § 6-5-410 from the changes made regarding punitive damages in other tort actions, subject to the severability provision of § 11. This could be interpreted as expressing the legislative intention that only punitive damages could be recovered in § 6-5-410 actions.
[11] Portia in W. Shakespeare's The Merchant ofVenice, act IV, scene i, line 218. *Page 1064